SCOTT F. WNUCK, PETITIONER $v$. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT *

Docket No. 26068–09.          Filed May 31, 2011.

R determined a deficiency in P's 2007 income tax on the
basis of wages that P did not report. At trial P admitted, "I
exchanged my skilled labor and knowledge for pay". In a
bench opinion the Court held for R, ruled that P's arguments

* This Opinion supplements the bench opinion previously rendered in this case on January
12, 2011, in Columbia, South Carolina.

498

were frivolous, imposed on P a penalty of $1,000 pursuant to I.R.C. sec. 6673(a), and warned P that if he repeated his frivolous positions he faced the risk of a steeper penalty. After the Court entered decision, P moved for reconsideration on the grounds that the Court had not adequately addressed his arguments. *Held*: P was not entitled to a Court opinion addressing his frivolous arguments, and his motion for reconsideration will be denied. *Held*, *further*, P's penalty under I.R.C. sec. 6673(a) is increased to $5,000.

Scott F. Wnuck, pro se.
*David M. McCallum*, for respondent.

### SUPPLEMENTAL OPINION

GUSTAFSON, *Judge*: Courts confronting frivolous arguments against the constitutionality, validity, applicability, and mandatory character of the income tax often aptly quote *Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984), which stated, "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent". We take this occasion to explain why it is usually *not* expedient to discuss and refute in detail the frivolous arguments that some litigants attempt to press in the Tax Court, and why litigants who press such arguments are not entitled to and should not expect to receive opinions rebutting their frivolous arguments.

This case is before the Court on petitioner Scott F. Wnuck's motion for reconsideration. When this case was tried January 12, 2011, Mr. Wnuck's only contention was that his wages are not subject to income tax. The Court's bench opinion, transcribed and served on January 21, 2011, characterized Mr. Wnuck's position as "frivolous" and did not address his arguments at length. On January 26, 2011, the Court's decision was entered sustaining the deficiency that the Internal Revenue Service (IRS) had determined against Mr. Wnuck and imposing against him a penalty of $1,000 pursuant to section 6673(a)(1)[1] for maintaining frivolous positions.

Mr. Wnuck then submitted a motion for leave to file a motion for reconsideration (which we treat as a motion to vacate the decision) and a separate motion for reconsider-

---

[1] Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 ("Code", 26 U.S.C.), as amended.

ation. The motion to vacate will be granted, but the motion for reconsideration will be denied, and decision will again be entered in favor of the IRS and against Mr. Wnuck, but this time with an increased penalty of $5,000.

## Background

At trial the only issue was whether Mr. Wnuck received taxable income in 2007; and he frankly stated, "I do not dispute that I exchanged my skilled labor and knowledge for pay". (Tr. at 13.) However, he explained, "I have come to believe that the—my earnings from the companies that I worked for did not constitute taxable income." (Tr. at 8.)

Mr. Wnuck did admit, however, that he is not trained in the law:

I work in the machinery industry, working on large power generators and paper machines, paper mills, and that sort of thing. I've got several years of college and served an apprenticeship in learning my trade, as in education, but I don't have any training in the law * * *. * * * It's a steep learning curve in the Internal Revenue world, you know. [Tr. at 33–34.]

Nonetheless, in his closing argument at the conclusion of trial, Mr. Wnuck made a variety of supposed legal arguments (similar to arguments in his pretrial memorandum) to the effect that he does not owe income tax on his admitted earnings.

The Court commented on some of Mr. Wnuck's arguments at the time he made them. In its bench opinion, the Court later stated:

Mr. Wnuck admits his receipt of the amounts at issue. Section 61(a) defines gross income as meaning "all income from whatever source derived, including (but not limited to) (1) Compensation for services . . . ." Mr. Wnuck's payments from his employers clearly fall within this broad description. His arguments to the contrary, his arguments about his employment status, and all his other arguments are frivolous. See, e.g., *Ulloa v. Commissioner*, T.C. Memo. 2010–68. The income items at issue are taxable to Mr. Wnuck.

The *Ulloa* opinion that the Court cited addresses some but not all of the arguments that Mr. Wnuck had pressed.

The Court both sustained the deficiency as determined by the IRS and imposed on Mr. Wnuck, pursuant to section 6673(a), a penalty of $1,000 for taking frivolous positions. The Court stated:

We take no pleasure in doing so, and we there[fore] impose a relatively modest penalty, given that we have the discretion to impose a penalty as high as $25,000. Mr. Wnuck should be aware, however, that if he should ever repeat his maintenance of frivolous tax litigation, he would stand in peril of a much steeper penalty.

Undeterred, Mr. Wnuck has now filed a motion for reconsideration, in which he reasserts (1) his argument that his earnings are not taxable "wages"; (2) his argument based on provisions in title 27 of the Code of Federal Regulations; and (3) his argument about supposed errors in his "Individual Master File" maintained by the IRS—all three of which he had asserted at trial. Mr. Wnuck complains about the Court's characterization of his arguments as "frivolous", especially since the Court did not separately discuss each argument:

For him [the judge] to claim, "his arguments about his employment status, and all his other arguments are frivolous", as he did on page 5 ([line] 19), without even addressing them is disingenuous at best.

We now explain why it is not "disingenuous" (or otherwise improper) for a court to give short shrift to frivolous arguments.

## Discussion

### I. *Why we usually decline to refute frivolous anti-tax arguments*

The reasons that courts decline "to refute these [frivolous] arguments with somber reasoning and copious citation of precedent", *Crain v. Commissioner*, 737 F.2d at 1417, include the following.

#### A. *The number of potential frivolous anti-tax arguments is unlimited.*

If one is genuinely seeking the truth, if he focuses on what is relevant, and if he confines himself to good sense and logic, then the number of serious arguments he can make on a given point is limited. However, if one is already committed to a position regardless of its truth, if he is willing to say anything, if he is willing to ignore relevance, good sense, and logic, and if he is simply looking for subjects and predicates to put together into sentences in ostensible support of a given

point, then the number of frivolous arguments that he can make on that point is effectively limitless. When each frivolous argument is answered, there is always another, as long as there are words to be uttered. Such arguments are without number. Consequently, a Court that decides cases brought by persons willing to make frivolous arguments—such as "tax protesters" or "tax defiers" [2]—would by definition never be finished with the task of answering those frivolous arguments.

### B. *A frivolous anti-tax argument may be unimportant even to its proponent*.

Experience shows that a given frivolous argument may have little actual importance to the person making it. Frivolous anti-tax arguments are often obviously downloaded from the Internet; and by cut-and-paste word processing functions, these arguments are easily plunked into a party's filing. In other instances a promoter of frivolous anti-tax arguments is feeding those arguments to a litigant who adopts them uncritically and submits them to the Court. [3] For all a court

---

[2] Persons who make frivolous anti-tax arguments have sometimes been called "tax protesters". Section 3707 of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105–206, 112 Stat. 778, provided that "The officers and employees of the Internal Revenue Service * * * shall not designate taxpayers as illegal tax protesters", because Congress was "concerned that taxpayers may be stigmatized". S. Rept. 105–174, at 105 (1998), 1998–3 C.B. 537, 641. This prohibition applies only to IRS employees and not to the courts; and we use here the alternative term "tax defier" for a reason having nothing to do with any supposed stigma attached to being a "protester". Protest of the Government, if undertaken lawfully, is protected by the First Amendment to our Constitution and is as American as apple pie. In this country no stigma attaches to being a legitimate "protester". But people who file dishonest "zero returns" or who otherwise try to shirk their civic responsibility, evade their fair share of the tax burden, waste tax enforcement resources, and clog the courts with pointless lawsuits are simply scofflaws. They enjoy the benefits of American security and stability while refusing to shoulder their portion of the burden. They are not protesters but are defiers.

[3] In Mr. Wnuck's motion for reconsideration, "Petitioner admits to assistance in the preparation" of his pretrial memorandum. To the same effect, Mr. Wnuck testified—

As I said, I don't really completely understand how this works. I tried to read the rules of the court within the capacity that I could.

And I had assistance in creating these pleadings, within, you know, some help, so there are some issues that are deeper than what I've known before and I'm learning. It's a steep learning curve in the Internal Revenue world, you know.

THE COURT: The persons that helped you, are they lawyers or accountants?

THE WITNESS: No, sir.

[Tr. at 33–34.]

Of course, there is nothing necessarily sinister about receiving help in preparing court filings. However, this circumstance does involve the possibility of the off-stage participant's effectively practicing law without a license; and where the recommended arguments are frivolous, the promoter of those arguments eludes responsibility while putting the Tax Court litigant at risk for an exaggerated tax liability and section 6673(a)(1) penalties. That is manifestly the case here.

can tell, the litigant may not even have carefully read the arguments he submits.

Petitioners who make frivolous anti-tax arguments are sometimes intelligent people, but they tend to show great ignorance about the legal matters they argue. Tax defiers have learned to admit to the Court (as Mr. Wnuck did) that they have no legal background or training. The admission is often manifestly true. However, this admission is evidently made only to induce the Court to be lenient in overlooking the pro se litigant's procedural lapses and to incline the Court to be liberal in construing his pleadings. The admission of ignorance does not indicate a willingness to accept information from someone who does have that background and training in tax law.

The frivolous argument, made from this position of witting and willful ignorance, seems to be merely an incidental ornament that adorns an article of faith—namely, the belief that I don't owe taxes. The tax defier firmly holds that postulate above and apart from any arguments. Anything in favor of that postulate may be advanced, no matter how silly; anything against it can be ignored. If a given frivolous argument is decisively rebutted, then it may or may not be retired; but even if the individual argument is retired, the cause is not abandoned. Thus, the specific argument hardly matters even to the litigant.

Consequently, the value of answering frivolous anti-tax arguments—even the subjective value to the individual litigant—is often doubtful.

C. *Many frivolous anti-tax arguments have already been answered.*

This Court and other courts have addressed and rejected many of the recurring frivolous anti-tax arguments, including (as is especially pertinent here) the general argument that wages are not subject to the income tax [4] and the particular

---

However, the Court did warn Mr. Wnuck that his arguments were frivolous; and Mr. Wnuck even acknowledged the possibility that "maybe I've been lead down [sic] astray by some of these tax protester gurus. I don't know. But I haven't seen anything to upend the theories that I've been reading." Consequently, we hold Mr. Wnuck responsible for the arguments he has persisted in making.

[4] Over 30 years ago, in *Reading v. Commissioner*, 70 T.C. 730 (1978), affd. 614 F.2d 159 (8th Cir. 1980), this Court explained the fallacy of the argument that wages are not taxable income.

Continued

argument that the income tax does not apply to wages earned within the 50 States.[5] Moreover, the IRS publishes and occasionally updates "The Truth About Frivolous Tax Arguments",[6] a compendium of frivolous positions and the caselaw refuting them. That paper collects caselaw showing—contrary to Mr. Wnuck's argument—that wages are indeed subject to the income tax, at 13–18, and that the income tax does indeed apply within the 50 States, at 26–28. Anyone with the inclination to do legal research relevant to the validity of the income tax as applied to wages—even mere research with an Internet search engine—will confront such authorities.

Consequently, it is doubtful whether tax jurisprudence will be much advanced by issuing yet another opinion affirming the obvious truisms about tax law and refuting Mr. Wnuck's already soundly refuted contentions.

D. *The litigant who presses the frivolous anti-tax argument often fails to hear its refutation.*

With some happy exceptions, the refutation of a frivolous anti-tax argument often seems to fall on deaf ears, and the litigant persists in making the same doomed argument.[7]

---

Since then, arguments that compensation for services is not taxable have been repeatedly and thoroughly rejected in cases too numerous to mention. Arguments equivalent to those pursued by Mr. Wnuck have resulted in criminal convictions, e.g., *United States v. Sloan*, 939 F.2d 499 (7th Cir. 1991); *United States v. Collins*, 920 F.2d 619 (10th Cir. 1990); civil fraud penalties, e.g., *Rowlee v. Commissioner*, 80 T.C. 1111 (1983); *Chase v. Commissioner*, T.C. Memo. 2004–142; section 6673 penalties, e.g., *Sawukaytis v. Commissioner*, T.C. Memo. 2002–156, affd. 102 Fed. Appx. 29 (6th Cir. 2004); and sanctions for frivolous appeals, e.g., *Martin v. Commissioner*, 756 F.2d 38 (6th Cir. 1985), affg. T.C. Memo. 1983–473; *Perkins v. Commissioner*, 746 F.2d 1187 (6th Cir. 1984), affg. T.C. Memo. 1983–474.

[5] Mr. Wnuck's argument that the "United States" excludes the States has been rejected in cases going back 30 years. See *Tinnerman v. Commissioner*, T.C. Memo. 2010–150 (citing cases).

[6] Available at www.irs.gov/pub/irs-utl/friv—tax.pdf. In addition, the IRS publishes and updates, pursuant to section 6702(c), a list of frivolous positions. See *Thornberry v. Commissioner*, 136 T.C. 356, 368 & n.4 (2011) (citing Notice 2007–30, 2007–1 C.B. 883 (effective for submissions made between Mar. 16, 2007, and Jan. 14, 2008), Notice 2008–14, 2008–1 C.B. 310 (effective for submissions made between Jan. 15, 2008, and Apr. 7, 2010), and Notice 2010–33, 2010–17 I.R.B. 609 (effective for submissions made after Apr. 7, 2010)).

[7] For example, this Court's patient and comprehensive explanation (and its imposition of a $2,500 penalty under section 6673(a)(1)) in *Liddane v. Commissioner*, T.C. Memo. 1998–259, affd. per curiam without published opinion 208 F.3d 206 (3d Cir. 2000) (table), 2000–1 U.S.T.C. (CCH) par. 50,190 (per curiam opinion), did not prevent the taxpayer in that case from repeating his misguided arguments in a later case. See *Liddane v. Commissioner*, T.C. Memo. 1999–330. For recent examples, see *Kubon v. Commissioner*, T.C. Memo. 2011–41 (imposing a $20,000 penalty under section 6673(a) in light of prior frivolous litigation in *Kubon v. Commissioner*, T.C. Memo. 2005–71); *Holmes v. Commissioner*, T.C. Memo. 2011–31 (imposing a $25,000 penalty under section 6673(a) in light of prior frivolous litigation in *Holmes v. Commissioner*, T.C. Memo. 2006–80, *Holmes v. Commissioner*, T.C. Memo. 2010–42, and *Holmes v. Commissioner*,

Sometimes this is because the litigant, though evidently aware of the reasons that courts have rejected the argument,[8] is simply stubborn. Sometimes this is because the litigant seems not to understand either his argument or its refutation. And sometimes the reason for the litigant's behavior remains a mystery.

For example, at trial Mr. Wnuck made his argument, discussed below, that "includes" (in the definition of "United States" in section 3121(e)(2)) means "includes only". The Court addressed Mr. Wnuck directly and explained, "the definition that you rely on to make that point is not an income tax provision. It's an employment tax provision that really doesn't apply to your 1040 income tax return." (Tr. at 65.) This point evidently did not sink in, because Mr. Wnuck repeats the argument in his motion for reconsideration. He does not attempt to correct the Court's point and explain why he thinks that the provision *is* an income tax provision; he simply repeats the argument.

Consequently, when a litigant is willing in the first instance to take a position that is frivolous, the chances are good that he will be unmoved by explanations of why his position is frivolous. A court that undertakes such explanations is often wasting its time. We now nonetheless make that undertaking here, regretful that Mr. Wnuck may not heed the explanation, in order to illustrate what such an undertaking requires.

E. *Many frivolous anti-tax arguments are patently so.*

The fallacies of some frivolous arguments are gross and palpable. All three of the arguments in Mr. Wnuck's motion illustrate this point.

---

T.C. Memo. 2010–50); and *Mooney v. Commissioner*, T.C. Memo. 2011–35 (imposing a $2,000 penalty under section 6673(a) in light of prior frivolous litigation in *Mooney v. Commissioner*, docket No. 21647–06, affd. 309 Fed. Appx. 675 (4th Cir. 2009)).

[8] Mr. Wnuck (or whoever composed his arguments) obviously spent enough effort acquainting himself with tax law materials to be able to give citations (however misguided) of statutes, regulations, and court opinions. But it seems clear that in that effort he must have studiously ignored the available information, see pt. I.C. above, when composing his argument that his wages are not subject to the income tax. The wealth of information showing that the courts have always and repeatedly discredited and rejected his argument was evidently of no interest to him.

## 1. *Definition of "United States"*

To resist paying income tax on his wages, Mr. Wnuck makes this frivolous argument: He points out that "wages" are remuneration for "employment", see sec. 3121(a), that "employment" means service performed "within the United States", see sec. 3121(b), and that "[t]he term 'United States' when used in a geographical sense *includes* the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa", sec. 3121(e)(2) (emphasis added). Mr. Wnuck contends that the term "United States" therefore excludes everything else (such as the 50 States) and that his services performed in Pennsylvania (not in Puerto Rico, etc.) were not performed in the "United States" and therefore did not yield taxable wages. His argument fails for obvious reasons:

### a. *"Includes" does not mean "includes only".*

Section 7701(c) provides that "includes" "shall not be deemed to exclude other things". Anyone fluent in English knows that the word "includes" cannot be assumed to mean "includes *only*"—especially when such a meaning would have the ludicrous result of excluding from "United *States*" all 50 *States*. No tax research at all is necessary to conclude that Mr. Wnuck's position is frivolous.

### b. *The cited statute does not apply*.

Moreover, if one goes only a little further and actually reads the statutes that Mr. Wnuck cites, another fallacy in his argument becomes obvious: The Code sections he cites pertain not to income tax but rather to employment taxes (such as Social Security tax). If his argument made any sense at all, it could not affect his liability for *income* tax. The relevant Code section for income tax is section 61(a), which does not use the word "wages" (so critical to Mr. Wnuck's frivolous argument) but instead imposes tax on "all income from whatever source derived", including (in subsection (a)(1)) "[c]ompensation for services". When Mr. Wnuck stated, "I do not dispute that I exchanged my skilled labor and knowledge for pay", he made obvious his liability for income tax. The error of his position is flagrant.

c. *The cited case contradicts the argument*.

Both at trial and in his motion for reconsideration, Mr. Wnuck aggressively misconstrued Supreme Court precedent. He attempts to buttress his interpretation of "includes" with a citation of *Helvering v. Morgan's Inc.*, 293 U.S. 121, 125 n.1 (1934), which states that "the verb 'includes' imports a general class". Mr. Wnuck evidently construes this phrase to suggest that "includes" means or defines an entire and exclusive class of things. This construction is exactly wrong and cannot survive a reading of the entire sentence from which this phrase is lifted. In fact, *Morgan's* contrasts the verb "includes" with the verb "means" and states: "where 'means' is employed [in a statutory definition], the term and its definition are to be interchangeable equivalents, and * * * the verb 'includes' imports a general class, *some* of whose particular instances are those specified in the definition." *Id.* (emphasis added). That is, the Supreme Court expressly indicates that "includes" is *non*-exclusive, since it is used where only "some" of the members of the "general class" are specified. If section 3121(e)(2) said that United States "means" non-State territories, then it would be congruent with Mr. Wnuck's argument; but in fact the statute employs the alternative word—"includes"—so that it indicates that "United States" comprises a general class of instances only *some* of which are the non-State territories (and the others of which are obviously the 50 States). The *Morgan's* opinion is authority *against* Mr. Wnuck's position, and his citation of it as if it were support *for* his position is frivolous.

2. *27 C.F.R.*

Mr. Wnuck's motion for reconsideration makes the following argument, which cites title *27* of the Code of Federal Regulations ("C.F.R."):

Judge Gustafson also, in his opinion, ignored the Petitioner's argument that the enforcement regulations for 26 USC section 6020, substitute for returns, appear under 27 CFR Part 53 & 70 which relate to Alcohol, Tobacco, Firearms and explosives, not income or employment taxes. USC Title 26 sections 6651, 6201 and 6203 among others that may have been applied in this case also have enforcement regulations under CFR 27. The

Petitioner informed Judge Gustafson that he had never engaged in any regulated activity such as alcohol, tobacco, firearms or explosives.[9]

The background to this all-but-meaningless contention is this:

Mr. Wnuck submitted a Form 1040, U.S. Individual Income Tax Return, that reported the amount of his wages as zero. The IRS did not treat the document as a tax return but instead prepared a so-called "substitute for return" ("SFR"). It did so pursuant to section 6020(b), which provides:

(1) AUTHORITY OF SECRETARY TO EXECUTE RETURN.—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

(2) STATUS OF RETURNS.—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

By statute, it is the Secretary of the Treasury to whom this authority is given in the first instance; and the Secretary has authorized the Internal Revenue Service to execute SFRs by means of section 301.6020–1(b)(1) of the Procedure and Administration Regulations, that are codified in title *26* of the Code of Federal Regulations.

Mr. Wnuck's attention, however, has been called to other provisions—found in *27* C.F.R.—that also pertain to SFRs. Section 4181 of the Internal Revenue Code imposes a tax on firearms, and title 27 of the C.F.R. contains the regulation by which the Secretary of the Treasury authorizes not the IRS but the Alcohol and Tobacco Tax and Trade Bureau ("the TTB") to execute an SFR pertaining to the firearms tax. See 27 C.F.R. sec. 70.42(b)(1) (2010). Mr. Wnuck evidently claims that, because he has not sold firearms, an SFR cannot be prepared for him.

---

[9] Mr. Wnuck's argument is similar to the "meritless" argument rebutted in *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993) (the defendant "argues that the indictment merely informed him he had violated 26 U.S.C. § 7206; that the Code of Federal Regulations provisions dealing with the enforcement of section 7206 concern the Bureau of Alcohol, Tobacco and Firearms (BATF); and that since he had never dealt in anything relating to those matters, 'he was at a loss to see how any of his conduct would come under BATF, or be chargeable under a provision of law administered by BATF'"). The court observed that "Nothing in that section [7206] limits its applicability to the internal revenue laws concerning alcohol, tobacco and firearms, or even suggests that they are its primary focus. Under a reasonable construction of the statute, a person of ordinary intelligence could understand that it criminalizes lying on any form or document filed with the IRS." *Id.*

Whether he realizes it or not, Mr. Wnuck is contending that, because there is a regulation in *27* C.F.R. providing for the *TTB* to prepare substitutes for *firearms* tax returns, therefore the *IRS* may not prepare substitutes for *income* tax returns, despite explicit authorization for income tax SFRs in *26* C.F.R. Perhaps this argument arises from simple ignorance about the existence of 26 C.F.R. section 301.6020–1(b)(2). That regulation does indeed exist (in *26* C.F.R.), and it gave the IRS the necessary authority to prepare Mr. Wnuck's SFR.

Mr. Wnuck's eye fell on a provision in 27 C.F.R., however, and from that provision he concocted an imaginary rule that he pretended would eliminate his tax liability. But the existence of an additional (and unrelated) regulation in 27 C.F.R. has no implications whatsoever for this case. He had no reason to suppose that that provision was relevant here, and he had no reason to infer from that provision any rule that could have the effect he suggested. His argument is patently frivolous. [10]

### 3. *Alleged errors in Individual Master File*

Mr. Wnuck's third patently frivolous argument is based on—

errors that appear in the Individual Master File that the Internal Revenue Service maintains on him. These errors include but are not limited to, use of the Petitioner's social security number by two individuals, listing the Petitioner as a small business entity with gross receipts of fewer than ten million dollars instead of an individual human being and the fact that no code entry for the substitute for return created for this case on the prescribed date, August 10, 2009, exists.

Mr. Wnuck admitted his receipt of the earnings that give rise to the deficiency that the IRS determined. Our inquiry ends there. If the IRS's records reflect errors of the sort he alleges, they do not affect the outcome of this case. He does not allege that any other individual's income has been attributed to him; the deficiency was determined on the basis of his being

---

[10] Moreover, even if the SFR that the IRS prepared had been somehow invalid, Mr. Wnuck's tax liability would not be affected by it, since the IRS is not required to prepare an SFR but may simply issue a statutory notice of deficiency pusuant to section 6212(a). See *Hartman v. Commissioner*, 65 T.C. 542, 546 (1975); *Tinnerman v. Commissioner*, T.C. Memo. 2010–150 ("Neither a return nor a substitute for return is a prerequisite to a notice of deficiency") (citing, inter alia, *Schiff v. United States*, 919 F.2d 830, 832–833 (2d Cir. 1990), and *Roat v. Commissioner*, 847 F.2d 1379, 1381–1382 (9th Cir. 1988)).

an individual, not a corporation or any other entity; and the existence or non-existence of the SFR does not affect the fact or the amount of his liability. He "file[d] a petition with the Tax Court for a redetermination of the deficiency", pursuant to section 6213(a). He did not file a suit for mandamus to correct the agency's records—and the Tax Court would have no jurisdiction to entertain such a suit. See *Larsen v. Commissioner*, T.C. Memo. 2008–170. His argument about supposed errors in the IRS's records has no bearing here and is frivolous.

Where, as here, the fallacies in a position are obvious, it is doubtful whether any advantage results from stating the obvious. But having nonetheless undertaken to do so, we can now show *dis*advantages that may result from this effort.

F. *Addressing frivolous anti-tax arguments wastes resources.*

The time and money that are spent in addressing a frivolous position can be considerable. For example, the Court's discussions of Mr. Wnuck's three arguments (in part I.C. above) did not write themselves but required time to research and write. Admittedly, the research was not heavy intellectual lifting, but it did take time. Chaos can be spread quickly and easily; imposing order takes time and effort.

For instance, Mr. Wnuck assailed an SFR issued pursuant to section 6020(b) by simply inserting into his brief a paragraph citing "27 CFR Part 53 & 70"; but responding to that argument (see part I.E.2. above) was not so easy, even if the ultimate answer was obvious from the start. To actually address the frivolous argument, even if only summarily, required finding the particular regulations (none of which were cited by Mr. Wnuck) and explaining the applicability of section 6020(b) to both firearms tax *and* income tax, pursuant to both *26* C.F.R. section 301.6020–1(b)(1) and *27* C.F.R. section 70.42(b)(1). Or to choose another instance, Mr. Wnuck's argument citing *Helvering v. Morgan's, Inc.*, 293 U.S. 121 (1934), is obviously frivolous upon first reading; one never wondered whether *Morgan's* might have the significance that Mr. Wnuck asserted; but to answer Mr. Wnuck's argument (see part I.E.1.c. above) required finding, reading, and understanding the *Morgan's* opinion and then composing

an explanation of just how badly Mr. Wnuck had misunderstood it.

Moreover, not only the authoring Judge's time is involved in producing an opinion. To prepare a Tax Court opinion for public release requires substantial work by law clerks, clerical staff, and the Office of the Reporter of Decisions, as well as other Judges.[11] A Tax Court opinion is thus the product of considerable institutional effort.

The substantial effort expended to produce a Tax Court opinion is well spent, even in a small case and even where the outcome is clear, if the contentions being adjudicated are made seriously and in good faith. Taxpayers with disputes both large and small need to know that their good-faith disagreements with the tax collector will get serious attention from this Court. However, the peddlers of frivolous anti-tax positions and their clients who file petitions advancing those positions should not be allowed to divert and drain away resources that ought to be devoted to bona fide disputes. If frivolous positions were to bog down the operations of this Court, the resulting disadvantage would accrue not mainly to the Court itself but rather to litigants with legitimate issues and to the public generally. To responsibly manage its resources, the Court should therefore *not* address every frivolous argument.

G. *The time taken to address frivolous anti-tax arguments delays the assessment of tax.*

The IRS is charged with the responsibility of assessing tax against taxpayers. Sec. 6201. When the IRS proposes to assess a deficiency in income tax, the taxpayer may file a petition asking the Tax Court to redetermine the deficiency; and the mere filing of the petition—even if it is a frivolous petition—has the effect of delaying the assessment of the tax until after the case has been decided by the Tax Court. Sec. 6213(a). When the assessment is delayed, the collection of the tax is likewise delayed.[12] Where the petition is frivolous, there is no good reason for delay, and that assessment ought to occur as promptly as possible. Any time that the Court

---

[11] See sec. 7460(b); Cohen, "How to Read Tax Court Opinions", 2000 Hous. Bus. & Tax L.J. 1, available at www.hbtlj.org/v01/v01—cohen.pdf.

[12] See secs. 6321 (lien arises upon demand), 6331(a) (levy follows notice and demand), 6303 (notice and demand follows assessment).

spends in preparing and issuing an opinion results in an unfortunate delay.

## H. *Addressing frivolous anti-tax arguments risks dignifying them*.

The oft-cited opinion in *Crain v. Commissioner*, 737 F.2d at 1417, observes that one reason *not* to refute frivolous arguments is that "to do so might suggest that these arguments have some colorable merit." The observation is certainly valid. It is this Court's experience that taxpayers who take frivolous positions often have learned those positions from self-appointed anti-tax gurus with prepackaged pseudo-legal arguments that include inapposite citations from such sources as the Federal Register, inapplicable State and Federal statutes, court opinions taken out of context, and the Internal Revenue Manual (IRM). Some taxpayers seem to understand their frivolous arguments imperfectly, if at all, and seem not to understand the nature of the authorities they cite. [13] If, as it seems, such a taxpayer has been persuaded of these positions by the mere presence of legalese, then it is entirely possible (as *Crain* anticipated) that a serious discussion of a frivolous position will seem to him to confer respectability on that position.

For example, when we take five paragraphs (in part I.E.2. above) to explain why 27 C.F.R. section 70.42(b)(1) has no effect on the validity of an income tax SFR, we incur a risk: A legally unsophisticated taxpayer may wrongly infer that, if it took that much reasoning and writing to defeat the argument, then the argument must have had *something* going for it. The inference would be wrong, of course. Mr. Wnuck's 27 C.F.R. argument is hardly a legal argument at all; and all that is there is manifestly wrong for multiple reasons. But

---

[13] For example, Mr. Wnuck's motion for reconsideration cites the Supreme Court's opinion in *Helvering v. Morgan's, Inc.*, 293 U.S. 121 (1934) (which we discussed in part I.E.1.c. above); and then, as if to demonstrate the authority of Supreme Court precedent, he argues, "The Internal Revenue Manual clearly states that the Internal Revenue Service must rely on and abide by the decisions of the Supreme Court" (citing IRM pt. 4.10.7.2.9.8 (May 14, 1999) ("Importance of Court Decisions")). Of course, the truism that Supreme Court opinions are binding precedent in tax matters is hardly bolstered by the repetition of that truism in the IRM. Cf. *First Fed. Sav. & Loan Association of Pittsburgh v. Goldman*, 644 F. Supp. 101, 103 (W.D. Pa. 1986) ("The procedures set forth in the IRM do not have the effect of a rule of law and, therefore, are not binding upon the IRS. The manual is not promulgated pursuant to any mandate or delegation of authority by Congress. * * * Moreover, the provisions in the IRM are directory rather than mandatory. * * * We conclude that the pertinent procedures of the IRM are not binding upon the IRS and convey no rights to taxpayers").

since the actual substance of the frivolous anti-tax issue often seems to elude the litigant, and since all that affects him is the superficial appearance of legal matter, an explanation of why his argument is wrong may even be counterproductive. Perversely, the seriousness of the refutation becomes, in his mind, imputed to the frivolous argument itself. This is sometimes a good reason *not* to address frivolous arguments.

There is thus little advantage to be gained by addressing frivolous arguments, and there are disadvantages that may accrue from doing so. For that reason, litigants who present frivolous arguments should not expect to see them answered in opinions of this Court.

II. *Why we increase Mr. Wnuck's penalty under section 6673(a)(1)*

As we noted above (in part I.G.), the mere filing of a petition in this Court has the effect of delaying the assessment until the case has been decided. Sec. 6213(a). This creates an opportunity for a cynical taxpayer to file a petition, even if he has no good-faith basis for doing so, in order to put off the inevitable assessment of tax against him. To deter this abuse, Congress enacted section 6673(a)(1), which provides:

(1) PROCEDURES INSTITUTED PRIMARILY FOR DELAY, ETC.—Whenever it appears to the Tax Court that—

(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

(B) the taxpayer's position in such proceeding is frivolous or groundless, or

(C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

This Court is thus authorized under section 6673(a)(1) to impose a penalty not in excess of $25,000 when the taxpayer's position is frivolous[14] or groundless or when it

---

[14] A position maintained by the taxpayer is "frivolous" where it is "contrary to established law and unsupported by a reasoned, colorable argument for change in the law." *Coleman v. Commissioner*, 791 F.2d 68, 71 (7th Cir. 1986); see also *Hansen v. Commissioner*, 820 F.2d 1464, 1470 (9th Cir. 1987) (sec. 6673 penalty upheld because taxpayer should have known claim was frivolous).

appears that proceedings before it have been instituted or maintained by the taxpayer primarily for delay.

Mr. Wnuck advanced frivolous arguments, as we have shown. Both during Mr. Wnuck's trial and in the bench opinion served several days later, the Court clearly stated to Mr. Wnuck that it found his positions not just unavailing but frivolous. For that reason the Court, in its original decision, imposed on Mr. Wnuck a $1,000 penalty pursuant to section 6673(a); and the Court warned him of steeper penalties to follow if he persisted.

Mr. Wnuck disregarded that explicit warning when he filed his subsequent motion for reconsideration. That motion made clear that Mr. Wnuck did not have new points to make; he simply repeated the arguments that had already been ruled frivolous and suggested that the Court should have addressed those arguments in more detail in an opinion. He had to know that his motion was foredoomed, but there was a reason (i.e., an improper reason) for him to file the motion nonetheless:

By the interaction of the applicable rules (i.e., Rules 162 and 190(a) of the Tax Court Rules of Practice and Procedure, rule 13(a)(2) of the Federal Rules of Appellate Procedure, and sections 6213(a), 7481(a)(1), and 7485(a)), Mr. Wnuck's filing a motion to vacate had the effect of delaying his deadline for filing a notice of appeal and thereby delaying the date on which the IRS could assess the tax deficiency that it had determined and that this Court had upheld. Mr. Wnuck thereby required the Court to act on his case again, with the case remaining in limbo until that repetitive action is taken.

Mr. Wnuck's recent motion to vacate therefore was filed "primarily for delay", see sec. 6673(a)(1)(A), *and* was "frivolous", see sec. 6673(a)(1)(B). It is apparent that the Court's prior warnings and the original $1,000 penalty were not sufficient to deter Mr. Wnuck from maintaining frivolous positions. We will therefore increase the penalty to $5,000, in the hope that the greater penalty will have the effect of deterring further frivolous litigation. Mr. Wnuck is again warned that, if in the future he maintains frivolous litigation, he is at risk of a penalty as high as $25,000.

To reflect the foregoing,

*An appropriate order and decision will be entered.*