T.C. Memo. 2021-61

UNITED STATES TAX COURT

VINCENT J. FUMO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17614-13.

Filed May 17, 2021.

Mark E. Cedrone, for petitioner.

Marissa R. Lenius, Timothy R. Prosky, Kristina L. Rico, Laura A. Price,
Patricia P. Wang, and Timothy J. Driscoll, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: Petitioner was convicted in 2009 on Federal criminal

charges, including mail and wire fraud. One victim of his fraud was Citizens

Alliance for Better Neighborhoods (Citizens Alliance), an organization exempt

[*2] from Federal income tax under section 501(a) and (c)(3).[1] In May 2013 the Internal Revenue Service (IRS or respondent) determined that petitioner was liable for excise taxes under section 4958(a)(1). That section imposes, in the case of any "excess benefit transaction" involving a charity, a tax equal to 25% of the excess benefit, and provides that such tax "shall be paid by any disqualified person * * * with respect to such transaction."

A "disqualified person" is defined to include anyone who was, during a five-year look-back period, "in a position to exercise substantial influence over the affairs of the organization." Sec. 4958(f)(1)(A). Respondent has filed a motion for partial summary judgment contending that petitioner was a "disqualified person" with respect to Citizens Alliance during 2002-2004. Although he was not an officer, director, or employee of the organization, we agree with respondent that he was "in a position to exercise substantial influence over * * * [its] affairs." Ibid. We will accordingly grant respondent's motion to the extent set forth in this opinion.

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]**                                    Background

The following facts are based on the parties' pleadings and motion papers, the joint stipulation of facts, and the exhibits attached thereto. Included among those exhibits is the complete transcript of petitioner's testimony from his criminal trial. In the joint stipulation petitioner marked his trial testimony as authentic and admissible, and he expressly waived any evidentiary objection to it.

Petitioner was elected to the Pennsylvania State Senate in 1978, representing the first district in Philadelphia. Reelected many times, he served as a State senator until 2008. His tenure ended in 2009 when he was convicted on Federal corruption charges and sentenced to 55 months in prison.

In 1991, at petitioner's direction, three members of his senatorial staff incorporated the First District Environmental Defense Fund, which later became Citizens Alliance. As originally organized, its purpose was to maintain and improve the appearance of petitioner's senatorial district by cleaning streets, removing graffiti, shoveling snow, and carting away trash. In August 1999 the IRS issued a determination letter granting the organization tax-exempt status under section 501(a) and (c)(3). Citizens Alliance retained that status during 2002-2004.

Frank DiCicco, then a member of petitioner's senatorial staff, was one of the organization's incorporators and served as its president from 1991 through

[*4] 1999. Ruth Arnao, another staff member, was also an incorporator, listing her address as 1208 Tasker Street, the address of petitioner's office in the first district. Ms. Arnao initially served as secretary of the organization and served during 2001-2004 as its executive director, all while remaining employed by petitioner.

Petitioner himself was never employed as an officer, director, trustee, or employee of Citizens Alliance. However, he used his power and influence as the chairman of a senate appropriations committee to obtain funding for the organization from a variety of public and private sources. During 1991-2004 he was instrumental in securing at least $15 million in public grants for Citizens Alliance and a comparable volume of funding from private sources. This included a $17 million grant from a public utility, which Citizens Alliance received after petitioner agreed to drop a lawsuit against the utility.

In February 2007 a grand jury charged petitioner with 139 counts of criminal activity. Thirty-four of these counts, on which Ms. Arnao was charged as a codefendant, related to a scheme to defraud Citizens Alliance. The indictment alleged that petitioner and Ms. Arnao conspired to use Citizens Alliance's funds to purchase vehicles, farm equipment, tools, and consumer goods for petitioner's use and make other expenditures on his behalf (e.g., for foreign travel, the services of a private investigator, and cell phone service for his chauffeurs and daughter).

**[*5]** In March 2009, following a six-month trial, petitioner was convicted on all 34 counts related to the scheme to defraud Citizens Alliance. After several appeals related to sentencing, petitioner was ultimately required to pay Citizens Alliance restitution of $1,165,317. That was the amount of loss petitioner caused to the organization, as determined by the trial court.

Petitioner testified during his criminal trial. He testified that he considered Citizens Alliance a "constituent service" of his senate office and expected to derive political benefits from the work it performed in his district. Although Ms. Arnao exercised day-to-day control over the organization's affairs, petitioner approved most significant projects and directed many major expenditures (including purchase of the office building that housed his first district office).

Petitioner testified that he received over the years many "perks and gifts" from Citizens Alliance. He owned several residences, including a farm near Harrisburg, and he was apparently something of a tool aficionado. He admitted at trial that, between 1998 and 2003, he received $43,000 in tools paid for by Citizens Alliance. When he wanted the organization to purchase tools for him, he testified that he would email Ms. Arnao or another senate staff member, who would order the tools using Citizens Alliance's credit card.

[*6] Petitioner routinely enjoyed the use of trucks, minivans, and other vehicles owned or leased by Citizens Alliance. He admitted at trial that, in 2003, the organization paid for a bulldozer that was used exclusively on his farm. When the bulldozer broke down in December of that year, Citizens Alliance paid $16,000 to repair it.

Petitioner admitted at trial that he "did have a significant role" in Citizens Alliance. While he "did not make all the decisions," he "did make a lot of decisions on important topics." As he explained: "I don't have a title or a job. Do I have influence? Yes." When asked by his defense attorney to describe his relationship with Citizens Alliance, he stated: "I viewed it as my non-profit. I viewed it as my entity, my baby. Gave it birth and nursed it along, got involved more with strategy and ideas. You know, that's how we viewed it. And we ran it out of our office." On cross-examination he testified similarly: "I created it. I helped it. I guided it. I gave it strategy. I gave it my time and effort. I raised money for it. If it weren't for me, it wouldn't exist."

During cross-examination the prosecutor read to petitioner the definition of "disqualified person" as it appeared in the 2002 IRS Instructions to Form 990, Return of Organization Exempt from Income Tax: "A disqualified person regarding any transactions is any person who is in a position to exercise substantial influence

**[*7]** over the affairs of the * * * organization at any time during a five year period ending on the date of the transaction." Petitioner replied: "I did have substantial influence over the organization. So according to that I am a disqualified person."

Discussion

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party "may not rest upon the mere allegations or denials" of his pleadings but instead "must set forth specific facts showing there is a genuine dispute" for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

Respondent has filed a motion for partial summary judgment directed to two questions: whether petitioner was a "disqualified person" with respect to Citizens Alliance and whether he received "excess benefits" from it. We conclude that the

**[*8]** first question involves no genuine dispute of material fact and that it may appropriately be adjudicated summarily.

A.      Governing Statutory Structure

Section 4958 is captioned "Taxes on Excess Benefit Transactions." Section 4958(c)(1)(A) defines an "excess benefit transaction" to mean "any transaction in which an economic benefit is provided by an applicable tax-exempt organization directly or indirectly to or for the use of any disqualified person if the value of the economic benefit provided exceeds the value of the consideration (including the performance of services) received for providing such benefit." An "applicable tax-exempt organization" is defined to include an organization (such as Citizens Alliance) described in section 501(c)(3) and exempt from tax under section 501(a). See sec. 4958(e)(1).

Section 4958(a)(1) imposes on each excess benefit transaction an excise tax "equal to 25 percent of the excess benefit" and provides that this tax "shall be paid by any disqualified person referred to in subsection (f)(1) with respect to such transaction." If the excess benefit transaction is not corrected in timely fashion, the disqualified person is liable for a second-tier tax equal to 200% of the excess

[*9] benefit.  See sec. 4958(b).[2]  A "disqualified person" is defined to include (among others) "any person who was, at any time during the 5-year period ending on the date of * * * [an excess benefit] transaction, in a position to exercise substantial influence over the affairs of the organization."  Sec. 4958(f)(1)(A).

B.    Analysis

1.    "Disqualified Person"

The Department of the Treasury has issued comprehensive regulations under section 4958, including an elaboration of what it means to be a "disqualified person."  See sec. 53.4958-3, Foundation Excise Tax Regs.  Persons holding specified powers and responsibilities with respect to a charity are automatically deemed to be "in a position to exercise substantial influence over * * * [its] affairs."  Id. para. (c).  These officials include voting members of the governing body, presidents, chief executive officers (CEOs), chief operating officers, treasurers, and chief financial officers (CFOs).  Id. subparas. (1), (2), and (3).  Family members of disqualified persons, down to the level of great-grandchildren, are also "disqualified persons" with respect to the charity.  See id. para. (b)(1).

---

[2]Petitioner paid restitution of $1,165,317 to Citizens Alliance before the notice of deficiency in this case was issued.  The IRS considered this payment to constitute "correction" of the excess benefit transactions within the meaning of sec. 4958(f)(6).  Respondent has thus conceded the portion of the deficiencies determined under sec. 4958(b).

**[\*10]** Apart from these enumerated officials, members of their families, and certain affiliated entities, the question whether an individual is a disqualified person generally "depends upon all relevant facts and circumstances." Id. para. (e)(1). The regulation specifies a nonexclusive list of factors "tending to show that a person has substantial influence over the affairs of an organization." Id. subpara. (2). These include whether the person "founded the organization," is "a substantial contributor to the organization," has or shares authority to determine a substantial portion of its capital expenditures or operating budget, or "manages a discrete segment or activity of the organization that represents a substantial portion of * * * [its] activities, assets, income, or expenses." Id. subdivs. (i), (ii), (iv), (v).

The first factor listed in the regulation as tending to show that a person has "substantial influence" over an organization is whether he "founded the organization." Id. subdiv. (i). Petitioner admitted during his criminal trial that he "created" Citizens Alliance, "gave it birth," and "nursed it along." He regarded it as a "constituent service" designed to curry favor with voters in his district. The organization was incorporated at his direction by three members of his senatorial staff, two of whom listed his first district office as their address. He testified that, "[i]f it weren't for me, * * * [Citizens Alliance] wouldn't exist." Although Cit-

[*11] izens Alliance did not bear his name, it seems clear that he in substance "founded the organization." See sec. 53.4958-3(e)(2)(i), Foundation Excise Tax Regs.

The second factor listed in the regulation as tending to show that a person has "substantial influence" over an organization is whether he was "a substantial contributor to the organization (within the meaning of section 507(d)(2)(A))." Id. subdiv. (ii). A person may be a "substantial contributor" to an organization if his annual contributions constitute as little as 2% of its total contributions. See sec. 507(d)(2)(A). Although petitioner does not appear to have donated money to Citizens Alliance directly, he admitted during his criminal trial that he "raised money for it." Indeed, during 1991-2004 he was instrumental in securing at least $15 million in public grants for Citizens Alliance and a comparable volume of funding from private sources.

The regulation indicates that a 2% contributor will tend to have "substantial influence" over a charity. Sec. 53.4958-3(e)(2)(ii), Foundation Excise Tax Regs. That is presumably because a threat by such a donor to terminate his current level of funding would give him meaningful leverage over the charity's decision making. Relatively speaking, petitioner had much greater leverage over the affairs of Citizens Alliance because he was responsible for virtually all of its funding, albeit

[*12] indirectly rather than directly. He testified that, "[i]f it weren't for me, * * * [Citizens Alliance] wouldn't exist."

The regulation provides that the facts and circumstances tending to show that a person has substantial influence "include, but are not limited to," the seven factors listed therein. Sec. 53.4958-3(e)(2), Foundation Excise Tax Regs.; see Wnuck v. Commissioner, 136 T.C. 498, 507 (2011) (holding that the verb "includes," when used in statutes and regulations, "is non-exclusive"). We find that petitioner's role as the chief fundraiser for Citizens Alliance is an unlisted factor that strongly supports, by analogy with the second listed factor, his status as a "disqualified person."

The fourth factor listed in the regulation as tending to show that a person has substantial influence over an organization is whether he "has or shares authority to control or determine a substantial portion of the organization's capital expenditures [or] operating budget." Sec. 53.4958-3(e)(2)(iv), Foundation Excise Tax Regs. Because petitioner was not an officer, trustee, or employee of Citizens Alliance, he lacked such authority in a formal sense. But he testified during his criminal trial that, while he did not have "a title or a job," he "did make a lot of decisions on important topics."

[*13] Apart from petitioner's direct role in making important decisions, the officers of Citizens Alliance who had day-to-day authority over budget and capital expenditures were subject to petitioner's control because they were his employees. Mr. DiCicco, a member of his senatorial staff, was the president of Citizens Alliance during 1991-1999, and Ms. Arnao, another member of his senatorial staff, was its executive director during 2001-2004. Petitioner admitted during his criminal trial that "we ran * * * [Citizens Alliance] out of our office." We accordingly find that petitioner "ha[d] or share[d] authority to control or determine"--directly or indirectly--a substantial portion of Citizens Alliance's capital expenditures and operating budget.

Finally, the clearest indication that petitioner was "in a position to exercise substantial influence over the affairs of the organization," sec. 4958(f)(1)(A), is that he in fact exercised such influence, and did so repeatedly over a period of many years. The District Court in the criminal case determined that the benefits petitioner extracted from Citizens Alliance caused it to suffer a cumulative loss of $1,165,317. He could not have achieved this feat without possessing "substantial influence" over the organization and its personnel.

Petitioner concedes in his opposition to the motion for partial summary judgment that he had a "proven conspiratorial relationship" with Ms. Arnao, the

[*14] executive director of Citizens Alliance during 2001-2004. That alone establishes that he was "in a position to exercise substantial influence over [its] affairs" during that period. He explicitly admitted during his criminal trial: "I did have substantial influence over the organization. So according to that I am a disqualified person."

Petitioner offers no convincing argument in support of a contrary conclusion. Although he stipulated that "he and his Senatorial staff formed" Citizens Alliance, he argues that he "did not actually form the entity" because his staff members were the literal incorporators. Alternatively, assuming arguendo that he "formed the organization," he urges that he was not "[t]he person [who] founded the organization" within the meaning of section 53.4958-3(e)(2)(i), Foundation Excise Tax Regs. These hypertechnical arguments ignore the substance of what occurred, and we reject them for that reason.

Petitioner's principal argument is that he "was neither an officer, employee, nor director" of Citizens Alliance and "held no formal position with [it]." In his view a person can be a disqualified person only if he is "formally affiliated with a charitable organization." The test under section 4958, he says, is not whether the individual "in fact * * * manipulated substantial influence" over a charity, but whether he held a position that would enable him to wield substantial influence.

**[*15]** In effect petitioner asks us to construe the word "position," as used in section 4958(f)(1), to mean "office" or "job title." The term "position" has many meanings, and that of course is one of them. But "position" is also defined as "a location or condition in which one has the advantage." Webster's New World Collegiate Dictionary 1123 (4th ed. 2010); see also Oxford English Dictionary (3d ed. 2006) (defining "position" as an "advantageous placing or condition"). This latter meaning clearly fits the statutory context, which asks whether an individual is "in a position to exercise" influence over the organization's affairs. See H.R. Rept. No. 104-506, at 58 (1996), 1996 U.S.C.C.A.N. 1143, 1181 ("'Disqualified person' means any individual who is in a position to exercise substantial influence * * * whether by virtue of being an organization manager or otherwise." (Emphasis added.)).

The regulation makes clear that a person need not be an officer, director, or high-level employee of a charity to be a "disqualified person." Persons holding official positions, such as CEOs and CFOs, are automatically deemed "disqualified persons" under section 53.4958-3(c), Foundation Excise Tax Regs. The status of most other individuals is governed by the "facts and circumstances" test of paragraph (e). Under that test, an individual can be a "disqualified person" even though he has no formal job title or formal affiliation with the charity.

**[\*16]** Facts tending to show substantial influence include the fact that the person "founded the organization" or is a "substantial contributor" to it, regardless of his employment status. Id. para. (e)(2)(i) and (ii). A nonstock corporation controlled by a disqualified person is itself a "disqualified person[]." Id. subdiv. (vii). An artist who works only part time for a museum may be a disqualified person if the museum purchases a high-value painting from him. Id. para. (g), Example (2). An outside contractor that operates bingo games for a charity, as well as the controlling shareholder of that outside contractor, is deemed to be a disqualified person where bingo revenues constitute most of the charity's total annual revenue. Id. Examples (5) and (6). These examples show the error of petitioner's submission that an individual cannot be a "disqualified person" with respect to a charity unless he has a job title or other formal affiliation with it.[3]

---

[3]In an effort to show that material facts are in dispute, petitioner cites the testimony, during his criminal trial, of two individuals who joined the board of Citizens Alliance at Ms. Arnao's urging. Both said they were unaware of any control exercised by petitioner over the organization's affairs. Such testimony was in their self-interest: Board members risk a 10% excise tax if they knowingly participate in an excess benefit transaction. See sec. 4958(a)(2), (f)(2). Given petitioner's trial testimony and the corroborating evidence in the record, we conclude that the prior statements of these individuals do not create a genuine dispute of material fact.

**[*17]** 2.     "Excess Benefits"

Respondent also seeks summary judgment on a second question:  whether petitioner received "excess benefits" from Citizens Alliance during 2002-2004. We see nothing to be gained by addressing that question now.  In effect, respondent asks us to rule that petitioner received at least one dollar of "excess benefits" during the relevant period, deferring to trial the determination of the exact amount. We think these questions are too closely related to be decided separately; the evidence relevant to both propositions is the same and will need to be presented at trial in any event.  We will accordingly deny respondent's motion to the extent it is addressed to this second point.

To implement the foregoing,

An order will be issued granting in part and denying in part respondent's motion for partial summary judgment.