T.C. Memo. 2014-228

UNITED STATES TAX COURT

EUGENE J. KERNAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19672-11.                          Filed November 3, 2014.

Eugene J. Kernan, pro se.

<u>Michael W. Lloyd</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  Since sometime in the 1990s, Eugene Kernan has not filed

tax returns, and as is most notable here he did not file tax returns for 2001 through

2006, the years at issue.  Respondent issued notices of deficiency for those years

in which he determined deficiencies and related additions to tax under sections

[*2] 6651(a)(2) and 6654 as well as a fraudulent failure to file addition to tax under section 6651(f).[1]

Mr. Kernan claimed at trial and on brief that he is not required to file a tax return unless and until he is personally notified by the Commissioner that he is required to do so. All of his briefs, however, exceeded the generous page limits that the Court allowed. As a result, the Court will deem Mr. Kernan's briefs to be stricken. As for his argument that he is not required to file a tax return until personally invited to do so, that argument is frivolous. Mr. Kernan is required to file tax returns for the years at issue, and we sustain respondent's deficiency determinations for those years.

Because respondent failed to prove that Mr. Kernan acted fraudulently in failing to file his returns, the addition to tax under section 6651(f) does not apply.

Mr. Kernan is liable for the additions to tax under section 6651(a)(1) for failure to timely file, which respondent asserted in his answer, under section 6651(a)(2) for failure to timely pay tax, and under section 6654 for failure to make estimated tax payments.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3]                      FINDINGS OF FACT

Eugene Kernan did not file tax returns for tax years 2001 through 2006, the years at issue. Although Mr. Kernan did not file tax returns, he had income for those years and owed tax.

I.      Income and Business Activities

During the years at issue Mr. Kernan had income from at least two sources: he sold various tax avoidance products, and he performed various paralegal functions, including advising people in matters before the Internal Revenue Service (IRS). Deposits into Mr. Kernan's personal checking account from those business activities exceeded $79,000 per year. Mr. Kernan stipulated the deposits and "net gross income" as set forth in the table below. "Net gross income" is the parties' euphemistic term to describe gross bank deposits less amounts received from nontaxable sources. We will refer to this by the more accurate phrase "gross income".

| Year | Deposits | Gross income |
|------|----------|--------------|
| 2001 | $84,368  | $84,212      |
| 2002 | 99,721   | 99,610       |
| 2003 | 79,094   | 78,943       |
| 2004 | 90,269   | 88,814       |
| 2005 | 124,346  | 124,207      |
| 2006 | 103,672  | 103,672      |

**[*4]** Mr. Kernan failed to report this income and did not offer any evidence to show that these deposits came from nontaxable sources.

### A. Intellectual Property Sales

Mr. Kernan received income from various business activities. Mr. Kernan owned a Web site titled "The American Republic". In 1999 he wrote the contents of a CD-ROM titled "How to STOP the IRS", and he later published a short book titled "The Zen of Liberty". Mr. Kernan sold these products and other intellectual property on his Web site. When customers paid by credit card, Mr. Kernan used D.A.K. Consultants, a separate company owned by Delores Krainski, to process the credit card charges. D.A.K. Consultants would then write checks to Mr. Kernan for these credit card payments less the processing fees. Mr. Kernan would deposit these checks into his personal checking account.

### B. Paralegal Work

In addition, Mr. Kernan received income from performing paralegal work. His Web site advertised that he set up business entities, set up trusts, and performed other legal functions. In either late 1995 or early 1996 Mr. Kernan began providing informal representation to clients who were involved in IRS examinations. These clients paid Mr. Kernan, and he deposited the fees he received into his personal checking account.

**[*5]** II.      Return Filing

Mr. Kernan did not file returns reporting this income.  Likewise, he did not pay tax on his income or make estimated tax payments.

Mr. Kernan's decision not to file tax returns is based on his interpretation of section 6001, which he interprets to mean that he does not have to file a tax return unless and until the Commissioner notifies him in writing that he must do so.[2]  Mr. Kernan never received such notice.

Mr. Kernan has consistently held this belief and has communicated it to various governmental bodies.  Although Mr. Kernan filed returns for many years before 1993, he has not filed a tax return since then.  In 1995 he wrote a letter to the Social Security Administration asking for clarification as to whether he had been given notice of his obligation to maintain records and file tax returns.  Although he received a response dated November 1, 1995, from the Department of

---

[2]Section 6001 provides, in part:

> Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe.  Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title. * * *

**[*6]** Health and Human Services, it did not specifically address his questions.  He also made similar inquiries to the Commissioner of Internal Revenue and the Secretary of the Treasury, but he never received responses.

Mr. Kernan was not shy about sharing his views.  Indeed, he appeared on TV advocating his beliefs.  Mr. Kernan spoke in a TV interview that aired on April 14, 2001, stating his interpretation of section 6001 and asking the IRS to address whether he had received notice.

III.    IRS Examination

A.    IRS Promoter Investigation and Subsequent Income Tax Audit

The IRS began a promoter investigation of Mr. Kernan but later shifted its investigation to his income tax liability.  Agent Cris Corbin completed the audit.  Agent Corbin determined Mr. Kernan's gross income using bank records showing deposits made into Mr. Kernan's personal checking account.

Agent Corbin reconstructed Mr. Kernan's income by analyzing his deposits instead of relying on business records because Mr. Kernan refused to turn over any books or records.  The only items that he produced were copies of the intellectual property products that he sold on his Web site.  The IRS sent summonses to the bank where Mr. Kernan maintained his personal checking account to obtain

[*7] records. Mr. Kernan petitioned to quash the summonses, but all of the summonses were enforced.

Using the third-party bank records for Mr. Kernan's checking account, the IRS computed his unreported gross income by adding the specific deposits that were made into the account and subtracting any items that the IRS determined were nontaxable. Then the IRS put together a list of each deposit from various clients and customers that had purchased his intellectual property and engaged his help with paralegal work or tax controversy issues.

B. Other Bank Records Not Collected

During the IRS audit Agent Corbin collected bank records only for Mr. Kernan's personal checking account; she did not summon records from any other banks with which Mr. Kernan had apparent relationships. At trial Agent Corbin testified that there were deposits into Mr. Kernan's personal checking account from various sources that, in turn, led her to other accounts with which Mr. Kernan was potentially connected. Agent Corbin did not summon bank records for those accounts, and when reconstructing Mr. Kernan's income, she used only deposits into Mr. Kernan's personal checking account.

**[\*8]**  C.    Notices of Deficiency

The IRS prepared substitutes for returns under section 6020(b) for tax years 2001 to 2006.  The IRS issued two notices of deficiency based on those substitute returns on May 26, 2011.  The first notice of deficiency covered tax years 2001 through 2003.  The second notice of deficiency covered tax years 2004 through 2006.  In the notices the IRS determined the following deficiencies and additions to tax under sections 6651(a)(2) and (f) and 6654:

| | | Additions to tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(2) | 6651(f) | 6654 |
| 2001 | $27,853 | $6,963 | $20,193 | $1,113 |
| 2002 | 33,108 | 8,277 | 24,003 | 1,106 |
| 2003 | 24,358 | 6,090 | 17,660 | 628 |
| 2004 | 28,057 | 7,014 | 20,341 | 804 |
| 2005 | 39,446 | 9,862 | 28,598 | 1,582 |
| 2006 | 33,453 | 8,029 | 24,253 | 1,583 |

IV.    Tax Court Proceedings

Mr. Kernan timely filed his petition to seek redetermination of the deficiencies and additions to tax determined in the notices of deficiency.  He resided in Hawaii on the date the petition was filed.  Respondent timely answered

**[\*9]** and asserted additions to tax under section 6651(a)(1) if the Court were to find that section 6651(f) did not apply.

Trial was held on December 10, 2013, in Phoenix, Arizona. At the close of trial respondent moved for sanctions under section 6673, arguing that Mr. Kernan should be sanctioned because Mr. Kernan had taken a position that was frivolous.

Following trial the Court ordered simultaneous briefs, but the Court imposed page limits on the parties' briefs. Both parties timely filed these briefs, but Mr. Kernan's briefs exceeded the Court's page limits. Mr. Kernan's 88-page opening brief exceeded the 75-page limit imposed by this Court; his 88-page answering brief exceeded the 30-page limit that the Court imposed.

Respondent filed a motion to strike Mr. Kernan's briefs, to which Mr. Kernan responded.

## OPINION

Judges impose page limits for a reason. They force parties to hone their arguments and to state those arguments succinctly. Page limits cause, or should cause, parties to dispense with arguments of little or no merit in favor of those arguments that have a better chance of carrying the day. They encourage parties to avoid redundancy. And repetition.

**[\*10]** Parties often are quite creative in their efforts to circumvent page limits. Among the most blatant methods is to put material into an appendix and to not count that appendix as falling within the page limits.[3]  Another is to incorporate another document by reference.[4]  Less blatant, but still obvious, are those instances in which parties shrink the margins or the font size so that they can squeeze more text within the page limits that were imposed.[5]  All of these violate Rule 23(d).

Then there are methods that, while perhaps in technical conformity with our Rules, diminish the quality of a brief.  Examples include moving text into footnotes or using extensive block quotations so that the author can single-space more of the text.

---

[3]See, e.g., Fleming v. Cnty. of Kane, 855 F.2d 496, 498 (7th Cir. 1988); United States v. Mazzone, 782 F.2d 757, 765 (7th Cir. 1986); Storey v. Commissioner, T.C. Memo. 2012-115, 2012 WL 1409273, at \*17 (striking Commissioner's appendix because it exceeded the Court's page limits); Weiss v. Commissioner, T.C. Memo. 1995-70, 1995 WL 57337, at \*7 (striking Commissioner's appendix because it caused the brief to exceed the Court's 50-page limit set at trial).

[4]See Fleming, 855 F.2d at 498; Prudential Ins. Co. v. Sipula, 776 F.2d 157, 161 n.1 (7th Cir. 1985); Bobsee Corp. v. United States, 411 F.2d 231, 234 n.2 (5th Cir. 1969).

[5]See Kano v. Nat'l Consumer Coop. Bank, 22 F.3d 899, 899 (9th Cir. 1994); TK-7 Corp. v. Estate of Barbouti, 966 F.2d 578, 579 (10th Cir. 1992); Westinghouse Elec. Corp. v. N.L.R.B., 809 F.2d 419, 425 n.\* (7th Cir. 1987).

[*11] Mr. Kernan avoided the Court's page limits in perhaps the least creative way of all; he just ignored them. At the conclusion of trial the Court had the following colloquy with the parties concerning briefs:

> THE COURT: Okay. So, here's what we're going to do on the brief. Opening briefs, brief length and when I'm talking about brief length is what I would call the text of the brief, that's everything. If you have a table of contents, it doesn't count. If you have a table of authorities, it doesn't count. If you have a title page, it doesn't count. Everything after those up through and including the signature page not including attachments, okay?

> MR. KERNAN: Including the certificate of service?

> THE COURT: Not including the certificate of service. So, in essence, the body of the brief including the findings of fact, 75 pages for the opening brief, 30 pages for any reply brief.

The generous page limit for the opening brief was to accommodate proposed findings of fact, yet Mr. Kernan's proposed findings of fact were only two pages and consisted of argument, not findings of fact. Counting pages in the manner instructed by the Court, Mr. Kernan's opening brief came in at 88 pages. The Court did not need to go to great effort to discover Mr. Kernan's excess pages; he numbered them as instructed. His page 1 begins after his table of authorities, and his signature appears on page 88. Perhaps Mr. Kernan is fond of the number 88; his answering brief also came in at a whopping 88 pages, not counting attachments.

**[\*12]** Respondent filed a motion to strike Mr. Kernan's briefs, to which Mr. Kernan objected.

The Court was well within its power when it imposed page limits on the parties' opening and reply briefs. The Court derives its power to prescribe rules for its proceedings under section 7453, which provides that "the proceedings of the Tax Court * * * shall be conducted in accordance with such rules of practice and procedure * * * as the Tax Court may prescribe". There are no express page limits for briefs in our Rules; however, our Rules provide that "[w]here in any instance there is no applicable rule of procedure, the Court * * * may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure".[6] We have previously held that "[t]he implied authority of the Tax Court to enforce its Rules is a necessary adjunct to the full and effective implementation of the basic rulemaking power granted by section 7453. This doctrine of implied authority is well settled and has been applied by the Supreme Court specifically to tax tribunals."[7]

---

[6]Rule 1(b).

[7]<u>Westreco, Inc. v. Commissioner</u>, T.C. Memo. 1990-501, 1990 Tax Ct. Memo LEXIS 554, at \*50 (relying on <u>Goldsmith v. Bd. of Tax Appeals</u>, 270 U.S. 117 (1926)).

**[\*13]** Indeed, page limits are usual and customary among Federal courts in order to promote judicial efficiency. Rule 32(a)(7)(A) of the Federal Rules of Appellate Procedure imposes page limits of 30 pages or 14,000 words for opening briefs and of 15 pages or 7,000 words for reply briefs.[8] This case is appealable to the Court of Appeals for the Ninth Circuit, and 14 out of the 15 District Courts within that circuit have local rules imposing page limits on the parties.[9] The District of Hawaii, where Mr. Kernan resided at the time he filed his petition, imposes a 30-page or 9,000-word limit on briefs and a 15-page or 4,500-word limit on reply briefs.[10] Arizona, where Mr. Kernan resided at the time of trial, imposes a 17-page

---

[8]Fed. R. App. P. 32(a)(7)(A); cf. 9th Cir. R. 32-2 (stating that motions to exceed page limits are disfavored and "granted only upon a showing of diligence and substantial need.")

[9]See U.S. Dist. Ct. D. Alaska L.R. 39.2(b); U.S. Dist. Ct. D. Ariz. LRCiv 7.2(e); U.S. Dist. Ct. C.D. Cal. L.R. 11-6; U.S. Dist. Ct. N.D. Cal. Civil L.R. 7-4(b); U.S. Dist. Ct. S.D. Cal. CivLR 7.1(h); U.S. Dist. Ct. D. Guam, LR 7.1(g); U.S. Dist. Ct. D. Haw. LR 7.5; U.S. Dist. Ct. D. Idaho Loc. Civ. R. 7.1; U.S. Dist. Ct. D. Mont. L.R. 7.1(d)(2) (word limit); U.S. Dist. Ct. D. Nev. LR 7-4; U.S. Dist. Ct. D. N. Mar. I. LR 7.1(d); U.S. Dist. Ct. D. Or. LR 7-2(b); U.S. Dist. Ct. E.D. Wash. LR 7.1(e); U.S. Dist. Ct. W.D. Wash. LCR 7(e); cf. U.S. Dist. Ct. E.D. Cal. L.R. (stating that although this is the only District Court in the Ninth Circuit without local rules imposing page limits, its rules contain page limits for bankruptcy proceedings, and one judge has standing orders imposing page limits).

[10]U.S. Dist. Ct. D. Haw. LR 7.5 (2014).

**[\*14]** limit on motions and memoranda and an 11-page limit on replies.[11]  And all of those local rules, as well as the Federal Rules of Appellate Procedure, impose page limits that are a mere fraction of what the Court allowed in this case.

The Court has the inherent power to deem Mr. Kernan's briefs stricken because he violated the Court's page limits.  "The Tax Court indisputably has the inherent authority to protect the integrity of its proceedings and to prevent a party from undermining its Rules."[12]  This inherent power of courts is not limited to Article III courts.  It is possessed by Article I courts such as the Tax Court, as well, because "it is the nature of a court qua court that gives rise to these inherent powers".[13]  Just as courts have the inherent authority to impose page limits, they also have the inherent authority to impose sanctions when a party exceeds those limits.[14]  The Court of Appeals for the Ninth Circuit has held that "[a]ll federal

---

[11]U.S. Dist. Ct. D. Ariz. LRCiv 7.2 (2014). But see U.S. Dist. Ct. D. Ariz. LRCiv. 16.1(d) (imposing longer limits in Social Security cases:  25 pages for briefs; 11 pages for replies).

[12]Westreco v. Commissioner, 1990 Tax Ct. Memo LEXIS 554, at *55.

[13]Westreco v. Commissioner, 1990 Tax Ct. Memo LEXIS 554, at *56 ("'Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct.'" (quoting Standing Comm. on Discipline v. Ross, 735 F.2d 1168, 1170 (9th Cir. 1984))).

[14]Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 964-965 (9th Cir.
(continued...)

[*15] courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience with their orders. * * * As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees[,] and assess fines."[15]  Mr. Kernan violated the express page limits set by the Court; therefore, the Court is well within its power to sanction him by deeming his briefs stricken in their entirety.

The Court's inherent power to deem Mr. Kernan's briefs stricken for violating the Court's page limits is demonstrated by frequent instances where courts have sanctioned parties for violations of page limits or their functional equivalent.  In Storey we struck a 314-page appendix to the Commissioner's brief for exceeding the prescribed page limit, stating that not only was the appendix inadmissible as new evidence at trial, but "even if * * * [the 314-page appendix] were argument instead of evidence, [it] causes the brief to exceed the page limits

---

[14](...continued)
2004) ("Sanctions are an appropriate response to 'willful disobedience of a court order[.]'" (quoting Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001))).

[15]F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136 (9th Cir. 2001) (citations omitted) (relying on Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) in partnership dissolution case where court imposed monetary sanctions, upholding civil sanctions on appeal, but overturning criminal sanctions).

[*16] the Court established at trial."[16]  Similarly, in <u>Weiss</u> we struck an appendix to the Commissioner's opening brief because the appendix caused the brief to exceed the 50-page limit set by the Court at trial.[17]  The Court of Appeals for the Ninth Circuit in <u>Kano</u> sanctioned the appellant's counsel for using smaller spacing between lines and smaller typeface for footnotes than was permitted under the rules.[18]  The brief would have been at least 15 pages over the limit had appellant's counsel followed the court's rules.[19]  The Court of Appeals for the Tenth Circuit in <u>TK-7 Corp.</u> struck the appellees' brief for "[u]sing a favorite undergraduate gambit" to exceed the court's page limit by inserting 102 footnotes with small type and spacing to shrink their brief down to half the size it would have been if the appellees had complied with the limits.[20]

Indeed, Mr. Kernan acknowledged in his objection to respondent's motion to strike that "there is no doubt that the Tax Court 'has the right to set limit[s] as to brief length and has discretion as to whether to accept and/or not consider

---

[16]<u>Storey v. Commissioner</u>, 2012 WL 1409273, at *17.

[17]<u>Weiss v. Commissioner</u>, 1995 WL 57337, at *7.

[18]<u>Kano</u>, 22 F.3d at 899.

[19]<u>Kano</u>, 22 F.3d at 899.

[20]<u>TK-7 Corp.</u>, 966 F.2d at 579.

**[\*17]** deficient briefs'.'" Accordingly, we will deem Mr. Kernan's opening and answering briefs stricken in a separate order.

I.      Requirement To File

Mr. Kernan is not put to a disadvantage by having his briefs deemed stricken because, for all of the verbiage he used to fill his pages, his argument can be distilled down to a single sentence that he uttered at trial: "No one ever sent me a notice saying where is your return." He elaborated on this point. It seems that Mr. Kernan's position is that he is not required to file a tax return until the Commissioner notifies him that he specifically is required to file a return. For this proposition, Mr. Kernan referred at trial to myriad of irrelevant authorities that we need not address in detail.[21] He laments that, in his meetings and conversations

---

[21]See Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these [frivolous] arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit."); Wnuck v. Commissioner, 136 T.C. 498, 504 (2011) ("[I]t is doubtful whether tax jurisprudence will be much advanced by issuing yet another opinion affirming the obvious truisms about tax law[.]"); Wnuck v. Commissioner, 136 T.C. at 511 ("[P]eddlers of frivolous anti-tax positions and their clients who file petitions advancing those positions should not be allowed to divert and drain away resources that ought to be devoted to bona fide disputes."); Sanders v. Commissioner, T.C. Memo. 1997-452, 1997 WL 602841, at \*4 ("[W]e are not obligated to exhaustively review and rebut petitioner's misguided contentions.").

[*18] with one representative of the IRS or another, "[n]ot once did he tell me how I was wrong or if, how I was wrong, if I was wrong."

Simply put, Mr. Kernan is wrong.  Mr. Kernan argues that the IRS "may require any person, by notice served upon such person" to file a tax return, and then argues that he has not been served with any such notice.[22]  Mr. Kernan's reading of a portion of a single Internal Revenue Code provision is incomplete in the sense that he not only omits words from that section, but also fails to heed other Code provisions.

Mr. Kernan is required to file a tax return, even without a personal invitation to do so.  Section 6012(a)(1)(A) provides that "[r]eturns with respect to income taxes under subtitle A shall be made by * * * [e]very individual having for the taxable year gross income which equals or exceeds the exemption amount".  We have previously addressed this issue and reached the same conclusion.[23]

---

[22]See sec. 6001.

[23]See Zook v. Commissioner, T.C. Memo. 2013-128, at *9 & n.5; Fox v. Commissioner, T.C. Memo. 1997-440, 1997 WL 593872, at *1,*3; cf. Funk v. Commissioner, T.C. Memo. 2001-291, 2001 WL 1398382, at *5, app. A, para. 5.

**[*19]** II.     Unreported Income

As a general matter, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving an error.[24]  However, in unreported income cases, "before the Commissioner can rely on this presumption of correctness, the Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity."[25] Once the Commissioner sufficiently connects the taxpayer with the unreported income, then the taxpayer "bears[s] the burden of proving that * * * [the Commissioner's] determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect."[26]

Respondent sufficiently connected Mr. Kernan with the unreported income, and Mr. Kernan has not shown that these amounts are incorrect or nontaxable. Respondent used a bank deposits analysis of Mr. Kernan's personal checking account to determine Mr. Kernan's unreported gross income for the years at issue. Mr. Kernan stipulated these amounts of gross income and did not show that they

---

[24]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[25]Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).

[26]DiLeo v. Commissioner, 96 T.C. 858, 871 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

**[*20]** are nontaxable.  He argued only that he did not have to file a tax return or pay tax until he received notice.  Respondent's determinations of gross income amounts were greater than the applicable exemption amounts for 2001 to 2006.  Accordingly, we sustain respondent's tax deficiency determinations for the years at issue.

III.   Fraudulent Failure To File

Section 6651(a) imposes an addition to tax for the failure to timely file tax returns, and that addition is enhanced under section 6651(f) if that failure to file is fraudulent.  When a person does not timely file, section 6651(a) imposes a maximum addition of 25% of the amount of tax required to have been shown on the return unless the taxpayer proves that the failure was for reasonable cause and not due to willful neglect.  Section 6651(f) increases that limit to 75% if the failure to file was fraudulent.  For the addition to tax to apply at the increased rate, respondent must prove by clear and convincing evidence that Mr. Kernan "(1) * * * has underpaid his taxes for each year; and (2) some part of the underpayment is due to fraud."[27]

Respondent proved the first element:  that Mr. Kernan underpaid his tax for the years at issue.  Mr. Kernan stipulated that he had gross income for 2001

---

[27]See DiLeo v. Commissioner, 96 T.C. at 873.

[*21] through 2006. Respondent proved he had not paid tax for these years.

These facts establish that Mr. Kernan underpaid his tax for each of the years at

issue. The remaining element that respondent must prove is fraudulent intent.

The Commissioner has the burden to prove fraudulent intent, and he must

demonstrate fraud by clear and convincing evidence.[28] More specifically, the

Commissioner must prove that the taxpayer deliberately failed to file, and also,

that by failing to file, the taxpayer intended to evade tax that he knew was owed.[29]

The Court evaluates the taxpayer's belief and intent at the time the taxpayer

decided not to file.[30] Because direct proof of the taxpayer's fraudulent intent is

rarely available, we rely on circumstantial evidence to show fraudulent intent.[31]

---

[28]See sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 652-653 (1994).

[29]Clayton v. Commissioner, 102 T.C. at 646-647; see also, e.g., Prof'l Servs. v. Commissioner, 79 T.C. 888, 930 (1982); Holmes v. Commissioner, T.C. Memo. 2012-251, at *30 (citing DiLeo v. Commissioner, 96 T.C. at 873).

[30]See Mohamed v. Commissioner, T.C. Memo. 2013-255, at *20-*23.

[31]See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; DiLeo v. Commissioner, 96 T.C. at 890; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Mohamed v. Commissioner, T.C. Memo. 2013-255.

[*22] A.    Disclosure as a Mitigating Factor

Mr. Kernan publicly declared that he was not required to file a tax return without prior notice. He inquired of the Social Security Administration whether he had been given notice of his obligation to maintain records and file tax returns. Mr. Kernan likewise sent letters to the Commissioner of Internal Revenue and the Secretary of the Treasury asking them to tell him whether he was mistaken about his interpretation under section 6001. Mr. Kernan also appeared in a TV interview and espoused his views regarding return filing. He told reporter Steve Krafft of his erroneous position and asked the IRS to come forward and tell him where he was wrong. These actions raise the issue of whether Mr. Kernan's disclosure can mitigate the fraud addition.

The Court of Appeals for the Third Circuit has held that disclosure can be a mitigating factor.[32] In Raley v. Commissioner, Mr. Raley failed to timely file returns for tax years 1972 through 1976.[33] Mr. Raley filed a Form W-4E, Exemption from Withholding, with his employer stating he did not have a tax liability for the prior year and did not anticipate a tax liability for the current year

---

[32]Raley v. Commissioner, 676 F.2d 980 (3d Cir. 1982), rev'g T.C. Memo. 1980-571.

[33]Raley v. Commissioner, 676 F.2d at 982.

[*23] either, for each of the tax years from 1973 through 1976. His employer did not withhold Federal income tax from his income for years 1973 through 1976. Mr. Raley sent multiple letters to the IRS, the Secretary of the Treasury, and other highly ranking Federal officials stating that he would not pay because taxes were unconstitutional. Then in 1976 he filed purported amended returns for tax years 1972 and 1973 that he did not sign and that did not report any income.[34] Mr. Raley pleaded guilty to the charge of willful failure to file a return for tax year 1974.[35] At his subsequent civil trial this Court held that he was liable for fraudulent failure to pay tax under former section 6653(b).[36] The Court of Appeals for the Third Circuit reversed, holding that Mr. Raley's letters mitigated a finding of fraud.

> [Mr. Raley] went out of his way to inform every person involved in the collection process that he was not going to pay any federal income taxes. The letters do not support a claim of fraud; to the contrary, they make it clear that Raley intended to call attention to his failure to pay taxes. It would be anomalous to suggest that Raley's numerous attempts to notify the Government are supportive, let alone suggestive, of an intent to defraud.[37]

---

[34]Raley v. Commissioner, 676 F.2d at 982-983.

[35]Raley v. Commissioner, 676 F.2d at 982.

[36]Raley v. Commissioner, 676 F.2d at 983.

[37]Raley v. Commissioner, 676 F.2d at 983-984.

**[*24]** The Court of Appeals for the Ninth Circuit held the opposite in <u>Edelson v. Commissioner</u>.[38]  In that case Mr. Edelson filed returns that the IRS rejected because the returns stated income of "'less than $10' annually calculated in 'constitutional dollars of silver and/or gold.'"[39]  Mr. Edelson hid assets by transferring them to his wife before he filed the invalid returns.[40]  He was convicted under section 7203 for willful failure to file for the tax years at issue.[41]  The Court of Appeals upheld the finding of fraud under former section 6653(b), stating:  "[d]isclosed defiance, standing alone, would not bar a finding of fraud."[42]  The court explained that fraudulent intent "does not require that the taxpayer hide his defiance from the IRS.  Whether or not Edelson disclosed his willful refusal to file is therefore irrelevant to the Tax Court's finding of fraud".[43]  In the light of this Ninth Circuit precedent, we find that Mr. Kernan's repeated disclosures do not

---

[38]<u>Edelson v. Commissioner</u>, 829 F.2d 828 (9th Cir. 1987), <u>aff'g</u> T.C. Memo. 1986-223.

[39]<u>Edelson v. Commissioner</u>, 829 F.2d at 829-830.

[40]<u>Edelson v. Commissioner</u>, 829 F.2d at 830.

[41]<u>Edelson v. Commissioner</u>, 829 F.2d at 829-830.

[42]<u>Edelson v. Commissioner</u>, 829 F.2d at 833.

[43]<u>Edelson v. Commissioner</u>, 829 F.2d at 833.

[*25] prevent the application of the fraudulent failure to file addition. Instead, the question is whether he had the requisite fraudulent intent.

## B. Fraudulent Intent

Because direct evidence of fraudulent intent is rare, we look for circumstantial evidence, or "badges of fraud", to demonstrate fraudulent intent. These badges of fraud show a taxpayer's intent to conceal, mislead, or otherwise prevent the collection of tax.[44] Badges of fraud include: (1) failing to file returns; (2) failing to make estimated tax payments; (3) maintaining inadequate records; (4) failing to cooperate with tax authorities; (5) filing false documents; (6) engaging in illegal activities; (7) concealing income or assets; (8) evidencing an intent to mislead; (9) dealing in cash; (10) providing implausible or inconsistent explanations of behavior; (11) understating income; (12) failing to be forthright with one's tax preparer; (13) evidencing intelligence, education, and tax expertise; and (14) demonstrating a lack of credibility.[45] "Although no single factor is

---

[44]DiLeo v. Commissioner, 96 T.C. at 874.

[45]See, e.g., Clayton v. Commissioner, 102 T.C. at 647; Mohamed v. Commissioner, at *32-*33; DeVries v. Commissioner, T.C. Memo. 2011-185, 2011 WL 3418248, at *6.

[*26] necessarily sufficient to establish fraud, a combination of factors is more likely to constitute persuasive evidence."[46]

Respondent has proven some of the badges of fraud in this case. Mr. Kernan failed to file tax returns and failed to make estimated payments. Mr. Kernan did not maintain adequate records. Mr. Kernan refused to cooperate with tax authorities, repeatedly attempting to quash IRS summonses for his records. Although Mr. Kernan correctly asserts that he was within his rights to challenge the IRS summonses, his repeated failed attempts to do so were uncooperative, even if legally permissible. Additionally, Mr. Kernan refused to produce business records.

Respondent asserted additional badges of fraud but failed to prove them by clear and convincing evidence. Mr. Kernan did not file false documents. Respondent asserts Mr. Kernan's past efforts to promote tax shelters is evidence of illegal activity, but respondent has not shown Mr. Kernan was involved in illegal activity; promoting tax avoidance products is not illegal. Mr. Kernan was neither indicted nor convicted of any crimes. Further, the ties respondent tried to make

---

[46]Mohamed v. Commissioner, at *33; Holmes v. Commissioner, at *31; Browning v. Commissioner, T.C. Memo. 2011-261, 2011 WL 5289636, at *13.

[*27] between Mr. Kernan and others who had been convicted of "illegal activities" were too attenuated.

Additionally, respondent failed to prove Mr. Kernan hid assets and income. Mr. Kernan deposited the income he received into a checking account that he held in his own name. Indeed, he did not conceal income but stipulated respondent's calculations of gross income for the years at issue that were based on these bank deposits. Similarly, we are not persuaded that Mr. Kernan was trying to conceal income when he had D.A.K. Consultants process credit card payments for him. D.A.K. Consultants simply processed the payments and wrote checks to Mr. Kernan for these amounts less its processing fees. Then he deposited these checks into his personal checking account, and respondent did not prove that there were additional, unreported credit card payments. Further, there was no evidence that Mr. Kernan kept two sets of books or dealt in cash. Respondent did not prove that Mr. Kernan had additional income in other bank accounts that he failed to report. The IRS chose not to obtain additional bank account information and used only deposit records from Mr. Kernan's personal checking account to determine his gross income.

Some of the badges of fraud listed above do not apply to the facts of this case. Mr. Kernan did not provide an implausible or inconsistent explanation of his

[*28] behavior.  Mr. Kernan did not "understate" his income because he never filed returns and did not report any income at all.  While a "failure to report substantial amounts of income over a number of years" may be persuasive evidence of fraudulent intent, it is not dispositive.[47]  Additionally, the badge of failing to be forthright with one's tax preparer does not apply here.

Finally, the last two badges of fraud listed above were not proven: intelligence, education, and tax expertise; and a lack of credibility.  Regarding the former, although he holds himself out as a tax professional, Mr. Kernan does not, in fact, have any specialized tax education or expertise.  His lack of expertise is demonstrated by his having reached a conclusion about return filing requirements that plainly contradicts well-established legal precedent.  As to the latter, Mr. Kernan was forthright and credible in presenting his erroneously held beliefs.  Therefore, we find there is not clear and convincing evidence of fraudulent intent.

---

[47]See DeVries v. Commissioner, 2011 WL 3418248, at *7.

**[*29]** C.     Good-Faith Belief

The facts in Mr. Kernan's case closely resemble the facts in Raney v. Commissioner.[48]  In Raney, the Court refused to impose an addition to tax under section 6651(f), holding that Mr. Raney's good-faith belief that he did not have to pay taxes negated fraudulent intent.[49]  Mr. Raney claimed 15 withholding allowances on his Form W-4, took the position that there was not a statute that required him to pay tax on his income earned from the U.S. Postal Service, and did not report income on his Forms 1040, U.S. Individual Income Tax Return.[50]  The Court explained:  "A good faith misunderstanding * * * can exist even if the misunderstanding is objectively unreasonable.  We * * * cautio[n], however, that a good faith misunderstanding of the law is different from disagreement with the law or a belief that the law is or may be unconstitutional."[51]  We refused to impose an addition under section 6651(f), stating:

> While we believe that petitioner's position is objectively
> unreasonable, the sparse evidence in the record before us does not
> clearly and convincingly negate petitioner's implicit claim that he was
> acting on his good faith understanding of the law.  Of course, we may

---

[48]Raney v. Commissioner, T.C. Memo. 2000-277, 2000 WL 1227128.

[49]Raney v. Commissioner, 2000 WL 1227128, at *2.

[50]Raney v. Commissioner, 2000 WL 1227128, at *1-*2.

[51]Raney v. Commissioner, 2000 WL 1227128, at *2 (citation omitted).

[*30] question whether petitioner's purported misunderstanding of the law was the product of good faith. However, suspicions are not a substitute for evidence. Respondent bears the burden of proving fraudulent intent by clear and convincing evidence. Respondent has not done so. We therefore hold that petitioner is not liable for the additions to tax under section 6651(f).[52]

Likewise, we are not convinced by clear and convincing evidence that Mr. Kernan's beliefs were not held in good faith. The frivolity of his legal arguments is not enough, even when added to the badges of fraud present in this case, to establish fraudulent intent by clear and convincing evidence.

Respondent suggests that Mr. Kernan's belief was disingenuous and merely a guise to hide behind so he did not have to pay taxes, but Mr. Kernan has acted consistently with his belief before, during, and after the years at issue. His belief was that he did not have to file a return unless the Commissioner sent him written notification that he had an obligation to do so. He wrote multiple letters to Government agencies asking them for clarification. He informed the public at large of his position when he appeared on television and was interviewed in April 2001 on a FOX network affiliate's news broadcast, espousing his interpretation of section 6001.

---

[52]Raney v. Commissioner, 2000 WL 1227128, at *2 (fn. ref. omitted) (citations omitted).

[*31] Indeed, he gave a consistent message when he informally represented clients at IRS audit meetings. At trial Mr. Kernan said: "People would come to me and say I need you to tell me how I don't have to pay taxes. I can't do that. I wouldn't do that if I could. I'm not the authority. The IRS is the authority." At trial he repeated many times that he believed he was not required to file or pay without notice and that he never received such notice. Mr. Kernan's consistent actions support a good-faith, albeit misguided, belief rather than fraudulent intent to evade taxes.

In sum, respondent has failed to prove fraud under section 6651(f) by clear and convincing evidence for tax years 2001 through 2006.

## IV. Failure To File

Respondent asserted an addition to tax under section 6651(a)(1) for each of the years at issue if the Court were to find that respondent had not carried his burden under section 6651(f); however, respondent asserted it in his answer. The Court has jurisdiction to decide this issue under section 6214(a).[53] Because respondent did not raise this addition until his answer, respondent bears the burden of proof under Rule 142(a)(1).

---

[53]See, e.g., Mohamed v. Commissioner, at *15-*16.

[*32] Section 6651(a)(1) imposes an addition to tax for failing to timely file a Federal income tax return unless the failure to file was for reasonable cause and not due to willful neglect. A taxpayer may have reasonable cause if the taxpayer exercised ordinary business care and prudence but was not able to timely file.[54] Willful neglect means a "conscious, intentional failure or reckless indifference."[55]

Mr. Kernan stipulated gross income for the years at issue. Further, Mr. Kernan stipulated that he did not file returns for tax years 2001 through 2006. He failed to file returns because of his frivolous argument that he was not required to do so. Mr. Kernan did not provide any evidence of a defense to this addition to tax; accordingly, respondent has met his burden. The failure to timely file addition under section 6651(a)(1) applies for each of the years at issue.

V.     Failure To Pay

Section 6651(a)(2) imposes an addition to tax for failing to timely pay the amount of tax required to have been shown on the return unless the taxpayer proves that his failure was for reasonable cause and not due to willful neglect. The Commissioner bears the burden of production with respect to any addition to

---

[54]See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

[55]United States v. Boyle, 469 U.S. 241, 245 (1985).

[*33] tax.[56] The taxpayer then bears the burden of proving any defenses.[57] If no returns have been filed by the taxpayer, then the Commissioner must show that he prepared substitutes for returns that met the requirements under section 6020(b).[58] We have held that in order for substitutes for returns to comply with the section 6020(b) requirements "the return[s] must be subscribed, * * * [they] must contain sufficient information from which to compute the taxpayer's tax liability, and the return form[s] and any attachments must purport to be a 'return'."[59] The Court has found that the section 6020(b) requirements "have been met where the substitutes for returns consist of Forms 4549-A, Forms 886-A, and Forms 13496, and the forms contain the taxpayer's name and Social Security number and sufficient information to compute a tax liability."[60]

Respondent met his burden under section 6651(a)(2) because he made substitutes for returns for tax years 2001 to 2006 that met the requirements of

---

[56]Sec. 7491(c).

[57]See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

[58]See sec. 6651(g); Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

[59]Spurlock v. Commissioner, T.C. Memo. 2003-124, 2003 WL 1987156, at *10.

[60]Nix v. Commissioner, T.C. Memo. 2012-304, at *13.

**[*34]** section 6020(b), and respondent proved that Mr. Kernan owed tax and did not timely pay his tax liability for each of the years at issue. Respondent's substitutes for returns for tax years 2001 to 2006 included Forms 4549-A, Income Tax Examination Changes, Forms 886-A, Explanation of Items, and Forms 13496, IRC Section 6020(b) Certification, as well as Mr. Kernan's name and Social Security number and sufficient information to compute his tax liability. Because respondent has met his burden of production, Mr. Kernan has the burden of proving any defenses. Mr. Kernan did not challenge the amounts of deficiencies determined by the IRS and argued only that he was not required to file and pay until he received notice. His frivolous argument is not a valid defense. Consequently, the addition to tax under section 6651(a)(2) applies for each of the years at issue because Mr. Kernan did not timely pay the tax he owed.

VI.    Failure To Make Estimated Tax Payments

Section 6654(a) imposes an addition to tax for failing to make estimated tax payments. Where a taxpayer has a "required annual payment",[61] the section 6654 addition to tax is "automatically imposed unless the taxpayer proves that one of several statutory exceptions applies" or that the Commissioner's determination

---

[61]Sec. 6654(d).

[*35] was in error.[62]  Under section 6654(d), a taxpayer has a required annual

payment of 90% of the tax for such year if the taxpayer has not filed a return.  If a

taxpayer has a required annual payment, then the taxpayer must make four

estimated tax payments of 25% of the required annual payment for that year.[63]

The Commissioner bears the burden of production with respect to additions to tax,

and the taxpayer bears the burden of proving any defenses.[64]

Mr. Kernan is liable for the addition to tax under section 6654 for each of

the years at issue because he failed to make estimated tax payments and does not

have a valid defense.  Respondent proved Mr. Kernan had gross income and owed

tax for 2001 to 2006.  Accordingly, Mr. Kernan had required annual payments of

90% of the tax for each year at issue, was required to make estimated tax payments

on this required annual payment, and did not do so.  The burden shifts to Mr.

Kernan, and he has failed to raise any defense.

---

[62]See Sanders v. Commissioner, 1997 WL 602841, at *6 (citing Habersham-Bey v. Commissioner, 78 T.C. 304, 319-320 (1982), and Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980)).

[63]See sec. 6654(c) and (d).

[64]Sec. 7491(c); see Higbee v. Commissioner, 116 T.C. at 447.

**[*36]** VII.    Sanctions

At the close of trial respondent moved that the Court impose sanctions under section 6673.  Sanctions are warranted if the taxpayer has instituted the proceedings primarily for delay, has taken a position that is frivolous or groundless, or has unreasonably failed to pursue available administrative remedies.[65]  The Court has discretion to impose a maximum penalty of $25,000.[66]

Respondent asserts that Mr. Kernan should be sanctioned because he has instituted the proceedings primarily for delay and has taken a position that is frivolous or groundless.  A taxpayer evidences a primary purpose of delay if he files multiple frivolous motions or documents,[67] asks for multiple continuances and fails to appear,[68] fails to meet deadlines for brief submissions and refuses to

---

[65]Sec. 6673(a)(1).

[66]Sec. 6673(a)(1).

[67]See Moore v. Commissioner, T.C. Memo. 2007-200 (taxpayer filed multiple frivolous documents with the Court), aff'd, 296 Fed. Appx. 821 (11th Cir. 2008).

[68]See Loescher v. Commissioner, T.C. Memo. 1993-74 (taxpayer asked for two continuances for claimed medical reasons, failed to appear at trial for another medical excuse, and failed to respond to Court's order to show cause why case should not be dismissed).

[*37] follow the Court's orders,[69] refuses to cooperate in the stipulation process,[70] or merely uses frivolous or groundless arguments to delay paying his taxes.[71] A position is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law."[72] The word "groundless" means "having no ground or foundation: lacking cause or reason for support."[73] More specifically, a position is groundless if it lacks merit or states no justiciable facts in the petition and has no valid ground or foundation.[74] Frivolous and groundless claims divert the Court's time, energy, and resources away from more

---

[69]See Williams v. Commissioner, 119 T.C. 276, 280-81 (2002) (taxpayer failed to comply with Court's pretrial orders and improperly invoked automatic stay of the Bankruptcy Code to delay Tax Court proceedings); Keating v. Commissioner, T.C. Memo. 1985-312 (taxpayer failed to comply with Court order and failed to appear at hearing); Lynch v. Commissioner, T.C. Memo. 1983-428 (taxpayer failed to appear at calendar call and failed to prosecute his case).

[70]See Goff v. Commissioner, 135 T.C. 231, 237 (2010) (taxpayer refused to cooperate in the stipulation process and failed to comply with Court orders).

[71]See Beard v. Commissioner, 82 T.C. 766, 781 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986) (taxpayer admitted in his brief that he knew the Court had rejected arguments similar to his as frivolous and groundless in many prior cases).

[72]Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986).

[73]Nies v. Commissioner, T.C. Memo. 1985-216, 1985 Tax Ct. Memo LEXIS 418, at *14 (quoting Webster's Third New International Dictionary Unabridged).

[74]See Keating v. Commissioner, T.C. Memo. 1985-312, 1985 Tax Ct. Memo LEXIS 329, at *13-*14; Nies v. Commissioner, 1985 Tax Ct. Memo LEXIS 418, at *14-*15.

[*38] serious claims and increase the needless cost imposed on other litigants by these types of lawsuits.[75]  And "we can no longer tolerate abuse of the judicial review process by irresponsible taxpayers who press stale and frivolous arguments, without hope of success on the merits, in order to delay or harass the collection of public revenues for other nonworthy purposes."[76]

The Court must be cautious when imposing a penalty under section 6673 because "[t]he doors of our courts must always remain open to persons seeking in good faith to invoke the protection of the law".[77]  Taxpayers asserting the same frivolous arguments on multiple occasions are more likely to be subjected to a penalty under section 6673 than those appearing for the first time before our Court.[78]

We must determine whether Mr. Kernan was acting in good faith or knew his claims were frivolous and acted merely "to delay payment of taxes, clog up the

---

[75]Coleman v. Commissioner, 791 F.2d at 72.

[76]Kile v. Commissioner, 739 F.2d 265, 269-270 (7th Cir. 1984), aff'g Basic Bible Church v. Commissioner, 74 T.C. 846 (1980).

[77]May v. Commissioner, 752 F.2d 1301, 1306 (8th Cir. 1985).

[78]Compare Wheeler v. Commissioner, T.C. Memo. 2011-278, Howard v. Commissioner, T.C. Memo. 2005-144, and Funk v. Commissioner, T.C. Memo. 2001-291, with Lewis v. Commissioner, T.C. Memo. 2006-73, Shireman v. Commissioner, T.C. Memo. 2004-155, Sides v. Commissioner, T.C. Memo. 2004-141, and Kaeckell v. Commissioner, T.C. Memo. 2002-114.

[*39] courts, or as a symbolic protest against a system with which * * * [he did] not agree."[79] We have already concluded that Mr. Kernan sincerely believed his position in this litigation, frivolous as it is.

The Court often issues a warning in lieu of sanctions when a taxpayer asserts a frivolous position in our Court for the first time.[80] The rationale is that a warning will discourage the taxpayer from taking frivolous positions in the future.[81] We will not impose a monetary sanction against Mr. Kernan because this was the first time he petitioned our Court. We are mindful that Mr. Kernan has implied that he may not follow this Court's opinion on the merits. As he stated at trial:

> My understanding of the law is still what my understanding of the law is. There has been no, and I don't mean to be disrespectful, Your Honor. It's my understanding that according to administrative law and according to primary jurisdiction, it's not up to you to tell me that I'm required. It's not up to the District Court to tell me I'm required. It's not up to the guy down the street. It's not up to the Internal

---

[79]May v. Commissioner, 752 F.2d at 1308.

[80]See Leyshon v. Commissioner, T.C. Memo. 2012-248; Lizalek v. Commissioner, T.C. Memo. 2009-122; Shireman v. Commissioner, T.C. Memo. 2004-155.

[81]See White v. Commissioner, 72 T.C. 1126, 1135-1136 (1979); Hatfield v. Commissioner, 68 T.C. 895, 899-900 (1977); Cook v. Commissioner, T.C. Memo. 2010-137; Skeriotis v. Commissioner, T.C. Memo. 2007-52; Lewis v. Commissioner, T.C. Memo. 2006-73.

**[\*40]** Revenue agent of any shape or form or any level.  It's up to the District Director to serve me notice that I'm required.

But we warn Mr. Kernan that if he asserts frivolous arguments in this Court again we will likely impose sanctions under section 6673.

Conclusion

Because Mr. Kernan's briefs exceeded the generous page limits that the Court allowed, the Court, in its inherent power to both impose page limits and sanction parties, will deem his briefs stricken.  As for his argument on the merits that he is not required to file a tax return until personally invited to do so, that argument is frivolous.  Mr. Kernan is required to file tax returns, and we sustain respondent's deficiency determinations for the years at issue.

We find that respondent has failed to meet his burden of proving fraud under section 6651(f) by clear and convincing evidence.  Specifically, respondent has failed to prove that Mr. Kernan acted with fraudulent intent when he failed to file his returns for the years at issue; therefore, the section 6651(f) addition to tax does not apply.  However, we find Mr. Kernan liable for the section 6651(a)(1) addition to tax for failure to timely file tax returns for the years at issue.

Because Mr. Kernan is required to pay his income tax liabilities and make estimated tax payments, we find him liable for both the section 6651(a)(2)

**[\*41]** addition to tax for failure to timely pay tax owed and the section 6654(a)

addition to tax for failure to make estimated tax payments for the years at issue.

Finally, we will not impose section 6673 sanctions against Mr. Kernan

because this was his first time to appear before our Court.

To reflect the foregoing,

<u>An appropriate order will be issued,</u>

<u>and decision will be entered under Rule</u>

<u>155</u>.