T.C. Memo. 2021-129

UNITED STATES TAX COURT

BERNARD D. HOLLAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7115-20.                        Filed November 18, 2021.

Bernard D. Holland, pro se.

<u>Ashley M. Bender</u>, <u>Timothy J. Driscoll</u>, and <u>Amy Dyar Seals</u>, for
respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  The principal question in this case is whether petitioner is

taxable on retirement income he received during 2017.  Conceding that he received

these payments, petitioner asserts that they did not constitute taxable income

because they were received in exchange for his prior labor and were unconnected

**Served 11/18/21**

[*2] with his exercise of any Federal privilege. The parties have submitted the case for decision without trial under Rule 122.[1] Concluding that petitioner fares no better than other tax protesters who have advanced these arguments previously, we will enter decision for respondent.

## Background

The following facts are derived from the pleadings, a stipulation of facts, a supplemental stipulation of facts, and the exhibits attached thereto. Petitioner resided in North Carolina when he timely petitioned this Court.

Petitioner was retired during 2017. He had previously been employed as a service technician by PepsiCo. He drove a truck for a period of time and was a member of the Teamsters union.

During 2017 petitioner received Social Security benefits of $26,292. The Social Security Administration (SSA) reported these payments to petitioner and the Internal Revenue Service (IRS or respondent) on a Form SSA-1099, Social Security Benefit Statement. SSA withheld no tax from these payments.

During 2017 petitioner received a distribution of $20,928 from a retirement plan of which Fidelity Investments (Fidelity) was the custodian. Fidelity reported

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]** this distribution to petitioner and the IRS on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., checking the box for distribution code "7," indicating a normal distribution. Fidelity withheld no tax from this distribution.

During 2017 petitioner received a distribution of $4,200 from the Western Pennsylvania Teamsters and Employers Pension Fund (Pension Fund). The Pension Fund reported this distribution to petitioner and the IRS on a Form 1099-R, checking the box for distribution code "7," indicating a normal distribution. The Pension Fund withheld tax of $194 from this distribution.

In preparing his Form 1040, U.S. Individual Income Tax Return, for 2017, petitioner did not use the information reported to him on the Forms 1099-R. Rather, he attached to his return two Forms 4852, Substitute for Form W-2 or Form 1099-R, that he himself drafted. Taxpayers are instructed to complete a Form 4852 if their payor "doesn't issue * * * Form 1099-R" or "has issued an incorrect * * * Form 1099-R." On the Forms 4852 petitioner asserted that Fidelity and the Pension Fund had each made distributions to him of zero.

Petitioner reported on his return retirement plan distributions of zero, taxable Social Security benefits of zero, and taxable income of zero. He reported tax

**[*4]** payments of $2,892, whereas only $194 had actually been withheld by his payors. He asked that his purported overpayment be refunded to him.

At a time not disclosed by the record, petitioner submitted to the IRS an unsigned Form 1040 reporting the information listed above. On May 3, 2018, the IRS sent that document back to him and told him that he needed to sign the return. He signed the return on May 6, 2018, and filed it with the IRS. The return is stamped "received" by the Kansas City Service Center on June 4, 2018. Petitioner's account transcript likewise shows that the return was received by the IRS on June 4, 2018.

On February 24, 2020, the IRS issued petitioner a timely notice of deficiency for 2017 determining a deficiency of $4,413, an accuracy-related penalty of $1,422 under section 6662(a), and a late-filing addition to tax of $442 under section 6651(a)(1). The notice incorrectly asserted that petitioner had received $52,584 of Social Security benefits, double the amount he actually received. That error was evidently caused by SSA's issuance of two separate Forms SSA-1099, addressed to petitioner at two different addresses.

Respondent concedes that petitioner in 2017 received only $26,292 of Social Security benefits, the taxable amount of which respondent calculates as $8,143, as opposed to $19,317 as determined in the notice of deficiency. That concession

**[\*5]** reduces the deficiency to $2,734 and reduces the late-filing addition to tax to $254.  Respondent also concedes the accuracy-related penalty.  See sec. 6751(b).

Discussion

A.    Gross Income

Section 61(a) provides that "gross income means all income from whatever source derived," including "[c]ompensation for services."  Sec. 61(a)(1).  In cases of unreported income, the Commissioner must generally establish an evidentiary foundation connecting the taxpayer to the income-producing activity, Weimerskirch v. Commissioner, 596 F.2d 358, 361 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrate that the taxpayer actually received income, Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982).  Information supplied to the IRS on Forms W-2 and 1099 is sufficient to meet this burden.  See Hardy v. Commissioner, 181 F.3d 1002, 1005 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.  Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous.  See Williams v. Commissioner, 999 F.2d 760, 763 (4th Cir. 1993), aff'g T.C. Memo. 1992-153.

The IRS may not rely solely on a third-party report of income, such as a Form 1099, if the taxpayer raises a reasonable dispute concerning the accuracy of

[*6] the report.  See sec. 6201(d).  Far from doing so, petitioner has stipulated that he received the amounts of income reported on the Forms 1099.  Petitioner thus bears the burden of proving that the IRS erred in determining that during 2017 he received $25,128 of taxable retirement plan distributions and $8,143 of taxable Social Security benefits.

In contending that this income was immune from Federal income tax, petitioner offers a familiar array of arguments lifted from the tax-protester arsenal.  He contends that retirement benefits are essentially deferred wages, which are supposedly tax-exempt because received as an equal exchange for labor.  Ignoring the Sixteenth Amendment to the Constitution, he asserts that, "once someone has come into ownership of money or property, by fulfilling the terms of a [labor] contract, * * * that property can only be taxed by means of an apportioned tax."  He asserts that he could never have received wages to begin with because he was never a Federal employee, citing the definition in section 3401(c) that the term employee "includes" an officer or employee of the United States.  And he asserts that "outside of Federal geographical jurisdiction work cannot be taxed indirectly by the Federal government."

**[*7]** These are all time-worn tax-protester arguments that no court has ever accepted.[2] Petitioner is taxable on the income he received to the extent provided in the Internal Revenue Code. He submitted no evidence that he had any basis in either of his private retirement plans, so he is taxable on the full amount received ($20,928 + $4,200 = $25,128). Nor has he shown that respondent erred in calculating as $8,143 the taxable portion of his Social Security benefits. See sec. 86(a). We thus sustain an adjustment of $33,271 to petitioner's 2017 gross income.

B.     Late-Filing Addition to Tax

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto. Respondent contends that petitioner is liable for an addition to tax (reduced as discussed previously) of $254. Respondent has the burden of production on this issue. See sec. 7491(c).

---

[2]See Taliaferro v. Freeman, 595 F. App'x 961, 962-963 (11th Cir. 2014) (calling the section 3401(c) argument "frivolous" and "meritless"); Montero v. Commissioner, 354 F. App'x 173, 175 (5th Cir. 2009) (calling it "frivolous" and a "tax-protester argument[]"); Sullivan v. United States, 788 F.2d 813, 815 (1st Cir. 1986) (calling it "meritless"); United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) (calling it a "preposterous reading of the statute"); see also Crain v. Commissioner, 737 F.2d 1417, 1417-1418 (5th Cir. 1984) (calling the jurisdiction argument so "frivolous" that to address it "might suggest that * * * [it has] some colorable merit"); Wnuck v. Commissioner, 136 T.C. 498, 512 (2011) (calling these "anti-tax arguments" so frivolous that addressing them "risks dignifying them").

**[*8]** Petitioner's return for 2017 was due on April 17, 2018.[3] Respondent produced a certified transcript of petitioner's account showing that his 2017 return was received on June 4, 2018. The physical copy of the return is stamped "received" by the Service Center on June 4, 2018, and shows that petitioner signed it on May 6, 2018, three weeks after the due date.

Petitioner contends that he submitted to the IRS, by the April 17 deadline, an unsigned copy of his 2017 Form 1040. That document was not a "return" because it was not signed. See Beard v. Commissioner, 82 T.C. 766, 777 (1984) (holding that an essential element of a valid return is that "the taxpayer must execute the return under penalties of perjury"), aff'd, 793 F.2d 139 (6th Cir. 1986). In any event petitioner produced no evidence (such as a certified mail receipt) that he mailed his unsigned Form 1040 to the IRS before the filing deadline. See sec. 7502. The return itself, which shows that it was "returned for signature" on May 3, 2018, supplies no evidence of timely filing.

---

[3]Traditionally, the filing deadline for individual tax returns is April 15. See sec. 6072(a). However, if a filing deadline falls on a weekend or a legal holiday in the District of Columbia, the deadline is extended until the following business day. See sec. 7503. In 2018, April 15 fell on a Sunday and April 16 was Emancipation Day, which the District of Columbia recognizes as a holiday. Accordingly, the deadline for individual taxpayers to file returns for 2017 was extended to April 17, 2018, the following Tuesday.

**[\*9]** Petitioner does not contend that his failure to file his return on time was "due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1). Nor does he dispute respondent's revised calculation of the addition to tax. We accordingly sustain a late-filing addition to tax of $254.

C.      Frivolous Position Penalty

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty, not in excess of $25,000, "[w]henever it appears to the Tax Court that--(A) proceedings before it have been instituted or maintained * * * primarily for delay, [or] (B) the taxpayer's position in such proceeding is frivolous or groundless." The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the waste of judicial and IRS resources. See Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); Wnuck v. Commissioner, 136 T.C. 498, 513 (2011). "Frivolous and groundless claims divert the Court's time, energy, and resources away from more serious claims and increase the needless cost imposed on other litigants." Kernan v. Commissioner, T.C. Memo. 2014-228, 108 T.C.M. (CCH) 503, 512, aff'd, 670 F. App'x 944 (9th Cir. 2016).

Petitioner's arguments that his income was immune from Federal income tax are frivolous. See, e.g., Briggs v. Commissioner, T.C. Memo. 2016-86, 111

**[*10]** T.C.M. (CCH) 1389, 1391-1392 (imposing a $3,000 penalty on a taxpayer who advanced the section 3401(c) argument); Waltner v. Commissioner, T.C. Memo. 2014-35, 107 T.C.M. (CCH) 1189, 1200-1201, 1203 (imposing a $2,500 penalty), aff'd, 659 F. App'x 440 (9th Cir. 2016). The IRS publishes and occasionally updates "The Truth About Frivolous Tax Arguments," a compendium of frivolous positions and the case law refuting them. Petitioner's arguments are included in that compendium. The Truth About Frivolous Tax Arguments, Internal Revenue Service (March 2018), https://www.irs.gov/pub/taxpros/frivolous_truth_ march_2018.pdf. Although petitioner has no legal training, he evidently had no difficulty cutting and pasting material downloaded from tax-protester websites. Had he made even a modest inquiry using an internet search engine, he would have found the copious authorities refuting his stance. See Wnuck, 136 T.C. at 504 ("Anyone with the inclination to do legal research * * * will confront such authorities.").

This appears to be petitioner's first appearance in this Court, and he co-operated with respondent's counsel by executing stipulations of fact and preparing the case for submission without trial under Rule 122. We will thus refrain from imposing any penalty at this time. But we warn petitioner that he will risk a severe

**[*11]** penalty if he advances frivolous positions in any future appearance before this Court.

We have considered all remaining arguments petitioner made and, to the extent not addressed, we find them to be irrelevant or meritless.

To reflect the foregoing,

<u>An appropriate order and decision will be entered for respondent.</u>