# United States Tax Court

T.C. Memo. 2024-37

MERRIE P. WYCOFF,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 4034-21L.                              Filed March 28, 2024.

_____

Merrie P. Wycoff, pro se.

*Jonathan D. Walker* and *Melinda K. Fisher*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case petitioner seeks review pursuant to section 6330(d)(1)[1] of the determinations by the Internal Revenue Service (IRS or respondent) regarding her tax liabilities for 2001 and 2002. The IRS Independent Office of Appeals (Appeals) issued her a notice of determination sustaining the proposed collection action and rejecting her request for a collection alternative in the form of an offer-in-compromise (OIC), an installment agreement (IA), and/or currently not collectible (CNC) status. After being docketed in this Court the case was remanded to Appeals for further consideration. Following a supplemental hearing Appeals issued a supplemental notice of determination, finding

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** petitioner ineligible for CNC status and sustaining the proposed collection action.

Respondent has filed a Motion for Summary Judgment, contending that there are no disputes of material fact and that the settlement officers did not abuse their discretion in rejecting petitioner's request for a collection alternative. Separately, respondent filed a Motion to Impose a Sanction, contending that petitioner's position in the case is frivolous and groundless. *See* § 6673(a). Agreeing with respondent on both points, we will grant his Motions.

## *Background*

The following facts are based upon the parties' pleadings and respondent's Motion papers, Declarations, and attached Exhibits, which include the Administrative Record of the CDP proceeding along with a Certificate of Genuineness of the Administrative Record. *See* Rule 121(c). Petitioner resided in Colorado when she filed her Petition.

I.    *Petitioner's Tax Liabilities*

Petitioner's husband was a successful entrepreneur. His principal business was Zap! Products, Inc. (Zap), which manufactured various cleaning products. Petitioner has been the sole owner of Zap since her husband's death in March 2018.

The IRS examined the joint Federal income tax returns filed by petitioner and her husband for 2001 and 2002 and sent them a timely notice of deficiency. They timely petitioned this Court in October 2009. *See Wycoff v. Commissioner*, Docket No. 24158-09. Following a trial the Court issued an opinion sustaining the bulk of the adjustments and penalties determined in the notice of deficiency. *See Wycoff v. Commissioner*, T.C. Memo. 2017-203. We entered a Decision in January 2018, determining deficiencies of $3,743,741 and $1,200, and accuracy-related penalties of $743,061 and $240, respectively. We also held that petitioner was not entitled to "innocent spouse" relief under section 6015 with respect to any of the tax liabilities redetermined for 2001 and 2002.

The IRS assessed petitioner's 2001 and 2002 liabilities as redetermined in our Decision. Petitioner and her husband failed to pay those liabilities upon notice and demand for payment. On October 15, 2018, in an effort to collect petitioner's unpaid liabilities, the IRS sent her two Notices of Intent to Seize Your Assets and Notice of Your Right

[*3] to a Hearing (collectively, levy notice). As of October 13, 2023, petitioner's outstanding Federal income tax liabilities exceeded $13 million.

## II. *Collection Due Process Proceedings*

### A. *Initial CDP Hearing*

Petitioner, through her former counsel, timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. She requested a collection alternative in the form of "an installment agreement, an offer in compromise, or placing the account in currently not collectible status." Her case was assigned to a settlement officer (SO1) in Appeals, who verified that petitioner's 2001 and 2002 liabilities had been properly assessed and that all requirements of applicable law and administrative procedure had been satisfied.

On April 8, 2019, SO1 sent petitioner and her representative a letter scheduling a telephone conference for May 1, 2019. SO1 informed petitioner that, to enable Appeals to consider a collection alternative, she needed to supply before the hearing a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information. If petitioner wished to propose an OIC, she was instructed also to submit Form 656, Offer in Compromise. The CDP hearing was later rescheduled to May 15, 2019.

On May 15, 2019, petitioner's representative sent SO1 a package of documents, including a completed Form 433–A for petitioner and Form 433–B, Collection Information Statement for Businesses, for Zap (petitioner's wholly owned company). Included in the package was a letter urging that petitioner and Zap were undergoing financial stress. The letter requested that petitioner's accounts be placed in CNC status.

The Form 433–A identified five personal bank accounts with balances that totaled $247,406. Aside from equity of $5,000 in personal property, no other personal assets were reported. The Form 433–B showed that Zap had no assets, liabilities of $1.4 million (consisting of accounts payable), and income of $1,417,037 (stemming from compromised settlement adjustments to accounts payable that Zap, an accrual-basis taxpayer, had previously deducted).

The telephone conference took place as scheduled. SO1 confirmed her receipt of the financial information and explained that she was planning to submit an Appeals Referral Investigation (ARI) request to

[*4] the IRS Collection Division (Collection), which would analyze the documents to determine petitioner's ability to pay. She noted that petitioner still had not supplied a completed Form 656. At no point during the Appeals process did petitioner make a formal request for a collection alternative in the form of an IA or OIC.

On October 7, 2019, Collection responded to SO1's ARI request, concluding that petitioner had the ability to pay at least a portion of her tax liabilities and was not eligible for CNC status. Collection found the following:

- Petitioner had $247,408 of cash in five personal bank accounts. Although petitioner's representative alleged that this cash could not be applied to her tax liability, Collection found no evidence to support that allegation.

- Petitioner had equity of $1.8 million in her personal residence. That residence was titled to a limited liability company (LLC) of which petitioner's two daughters were the managing members. Collection determined that the LLC was a nominee of petitioner.

- Shortly after this Court entered its decision in 2018, petitioner transferred $350,000 to a third party. Collection determined that this was not the legitimate repayment of a loan, as alleged by petitioner's representative, but a transfer for no consideration.

SO1 forwarded the ARI results to petitioner's representative, who reiterated the arguments he had previously advanced unsuccessfully. On the basis of Collection's determination that petitioner had "equity in assets to pay towards the balances due," SO1 recommended that the levy notice be sustained. She forwarded a draft notice of determination to her Appeals Team Manager, who approved her recommendation to sustain the levy.

On March 19, 2021, Appeals sent petitioner a notice of determination, informing her that it was "unable to consider the collection alternatives of IA or OIC as you've made no formal request for either." The notice rejected her request for CNC status because her bank accounts had "funds available for payment towards [her] outstanding liabilities" and she had not shown that liquidation of the accounts would "cause [her] to be unable to meet necessary living expenses or result in hardship." The notice determined, however, that "Appeals must return the matter to Collection to complete [its]

[*5] investigation" with respect to the ownership of the personal residence and the purported loan transaction.

B.    *Remand and Supplemental CDP Hearing*

On June 21, 2021, petitioner timely petitioned this Court, contending that SO1 abused her discretion by sustaining the proposed levy and rejecting her request for CNC status. By Order served January 27, 2022, we granted the parties' joint Motion to Remand the case to Appeals for a supplemental CDP hearing on the two issues identified in the preceding paragraph. On February 7, 2022, respondent issued a remand memorandum and advised that Appeals should reconsider petitioner's request for CNC status after issuing a second ARI to Collection.

In March 2022 the remanded case was assigned to a new settlement officer (SO2) who reviewed the record and verified that all applicable legal requirements had been satisfied. Collection invited petitioner to supply additional information for its consideration, but she supplied none. Collection issued a second ARI concluding, on the basis of the information already in the case file, that petitioner had failed to provide evidence that the $350,000 paid to a third party in 2018 was the repayment of a loan.

With respect to whether petitioner was the true owner of her primary residence, valued at $1.8 million, Collection concluded that additional investigation would be needed to establish a fraudulent transfer. But when the supplemental hearing was held on December 20, 2022, petitioner chose not to participate. Having heard nothing further from petitioner during the ensuing three months, Appeals issued, on April 11, 2023, a supplemental notice of determination sustaining the proposed levy. The notice concluded that Appeals' original decision to deny petitioner's request for CNC status was proper because she had "sufficient assets from which to pay" at least a portion of her tax liabilities. Even without considering the $350,000 transfer to a third party and petitioner's likely equity in her $1.8 million residence, Appeals concluded that her bank account balances of $247,408 "alone are sufficient . . . to determine that CNC status is not acceptable."

On January 5, 2024, respondent concurrently filed a Motion for Summary Judgment and Motion to Impose a Penalty. We directed petitioner to file a single Response to the Motions by February 23, 2024. Petitioner responded to the Motions by mailing a letter to the Court,

**[\*6]** filed on February 14, 2024.  The letter, the content of which is very difficult to decipher, makes no substantive arguments.  Rather, it states (among other things) that petitioner "do[es] not argue . . . facts, jurisdiction, or venue."  We have recharacterized this letter as petitioner's Response to the IRS Motions for Summary Judgment and to Impose a Penalty.[2]

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials.  *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.    Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  *Sundstrand Corp.*, 98 T.C. at 520.  We find that there exist no genuine disputes of material fact and that summary adjudication is appropriate.

Petitioner's filings devote no attention to the issues raised in respondent's Motion for Summary Judgment.  She does not allege any genuine dispute of material fact and admits that she is not contesting the facts that respondent alleges.  We find the case appropriate for summary judgment.

II.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked out by our precedents.  Where the taxpayer's underlying liability is not properly in dispute, we review the IRS's determination for abuse of discretion only.  *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or

---

[2] The Court subsequently received from petitioner two similar letters, filed on February 20, 2024.  Those letters are likewise incoherent and state that petitioner "do[es] not argue . . . facts, jurisdiction, or venue."

[*7] without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Taxpayers may challenge their underlying tax liabilities at a CDP hearing only if they did not receive a statutory notice of deficiency for those liabilities or did not otherwise have an opportunity to dispute them. § 6330(c)(2)(B). Petitioner received a notice of deficiency for 2001 and 2002 and challenged the Commissioner's determination in the case at Docket No. 24158-09. We entered a decision for respondent in that case, and the decision is now final. *See* § 7481(a). Petitioner did not dispute her underlying liability at her initial or supplemental CDP hearing, and therefore she cannot challenge it here. *See Thompson v. Commissioner*, 140 T.C. 173, 178 (2013). We thus review the SOs' determinations for abuse of discretion only. *See* § 6330(c)(3); *Goza*, 114 T.C. at 182.

III. *Abuse of Discretion*

In deciding whether the SOs abused their discretion, we consider whether they (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3). Our review of the record establishes that the SOs properly discharged all of their responsibilities under section 6330(c).

At her initial CDP hearing petitioner was entitled to make offers of collection alternatives, including an OIC or an IA. *See* § 6330(c)(2) and (3). But petitioner did not propose either form of relief. There is no abuse of discretion when Appeals does not consider an OIC where (as here) a completed Form 656 was not submitted. *Gentile v. Commissioner*, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, *aff'd*, 592 F. App'x 824 (11th Cir. 2014). And it is not an abuse of discretion for an SO to decline to consider an IA where the taxpayer does not place a specific proposal on the table. *See McLaine v. Commissioner*, 138 T.C. 228, 243 (2012). Accordingly, SO1's determination that petitioner was ineligible for an IA or an OIC was appropriate.

The only collection alternative petitioner proposed was her request that her accounts be placed in CNC status. To be entitled to such relief, taxpayers must demonstrate, on the basis of their assets,

[*8] equity, income, and expenses, that they have no apparent ability to make payments on their outstanding tax liabilities. *See Foley v. Commissioner*, T.C. Memo. 2007-242, 94 T.C.M. (CCH) 210, 212. An account may not be placed in CNC status if the taxpayer has income or equity in assets unless enforced collection would cause hardship. *See Siebert v. Commissioner*, T.C. Memo. 2021-34, 121 T.C.M. (CCH) 1230, 1236 (citing *Internal Revenue Manual* (IRM) 5.16.1.2.9(1) (Aug. 25, 2014)). Hardship exists if the taxpayer is unable to pay reasonable basic living expenses. *Margolis-Sellers v. Commissioner*, T.C. Memo. 2019-165, 118 T.C.M. (CCH) 488, 498 (citing IRM 5.16.1.2.9(1)).

The initial notice of determination indicated that further investigation was needed to address questions relating to petitioner's $1.8 million equity in her residence and $350,000 transfer to a third party. The case was remanded to Appeals to investigate those matters. When the Court remands a case to Appeals, the further hearing is a supplement to the taxpayer's original CDP hearing, not a new hearing in and of itself. *See Kelby v. Commissioner*, 130 T.C. 79, 86 (2008). Because a supplemental notice of determination was issued, we review the position taken by Appeals in that notice. *Ibid.*

That notice found the denial of petitioner's request for CNC status to be proper. Appeals determined that petitioner, far from being unable to pay anything at all, had reported on her Form 433–A assets that could be used to reduce her tax liabilities. Considering the information that petitioner herself supplied, SO2 concluded that she could pay at least some of her tax liabilities and that she had not shown that payment would cause hardship. Collection determined, in responding to the second ARI request, that petitioner had supplied no evidence that the $350,000 transfer in 2018 was the repayment of a bona fide loan. In any event, SO2 determined that petitioner's reported bank account balances of $247,408 "alone are sufficient for Appeals to determine that CNC status is not acceptable." This Court will neither substitute its judgment for that of an SO nor recalculate a taxpayer's ability to pay. *See O'Donnell v. Commissioner*, T.C. Memo. 2013-247, 106 T.C.M. (CCH) 477, 481.

The record shows that SO2 performed a balancing test, finding that the proposed levy action adequately balances the need for efficient tax collection with petitioner's concerns. Given petitioner's history of noncompliance, the magnitude of her outstanding liabilities, and her

**[\*9]** equity, we conclude that SO2 did not abuse her discretion in sustaining the proposed levy.

IV.    *Motion to Impose a Penalty*

The Court may impose a penalty of up to $25,000 if a taxpayer has instituted or maintained proceedings primarily for delay or has taken positions that are frivolous or groundless. § 6673(a)(1)(A) and (B). Petitioner has repeatedly been warned of this fact. In April 2022 she began filing letters with the Court without the advice of her now-former counsel. We have stricken three letters from the record since then, warning petitioner numerous times about the risk of penalty for frivolous filings.

Since July 12, 2022, when we issued our first Order cautioning petitioner, she has submitted more than 20 letters containing arguments that are frivolous and have been identified as such by the IRS. *See* I.R.S. Notice 2010-33, 2010-17 I.R.B. 609, 609–12. Even though petitioner is not a lawyer, a modest inquiry using an internet search engine would have led her to online sources showing the frivolous nature of these arguments. *See Wnuck v. Commissioner*, 136 T.C. 498, 504 (2011) ("Anyone with the inclination to do legal research . . . will confront such authorities.").

The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file and litigate. *Takaba v. Commissioner*, 119 T.C. 285, 295 (2002). This is because frivolous and groundless claims "divert the Court's time, energy, and resources away from more serious claims and increase the needless costs imposed on other litigants." *Kernan v. Commissioner*, T.C. Memo. 2014-228, 108 T.C.M. (CCH) 503, 512, *aff'd*, 670 F. App'x 944 (9th Cir. 2016). With a view to deterring abuse of judicial and IRS resources, this Court must exercise its discretion to determine when a penalty under section 6673 is appropriate, and in what amount. *See Precourt v. Commissioner*, T.C. Memo. 2010-24, 99 T.C.M. (CCH) 1112, 1118.

Petitioner has continued her pattern of frivolous filings despite our warnings. However, her filings display confusion and make it clear that she has suffered from loss of representation by her former counsel. We will therefore exercise our discretion to impose a modest penalty of $250.

**[*10]**  To reflect the foregoing,

*An appropriate order and decision will be entered.*